# DELAWARE COUNTY COMMISSIONERS v. DIEBOLD SAFE AND LOCK COMPANY.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE DISTRICT OF INDIANA.

No. 39.   Submitted April 26, 1889. — Decided March 3, 1890.

Under the act of March 3, 1875, c. 137, the restriction of the original jurisdiction of the Circuit Court of the United States in suits by an assignee whose assignor could not have sued in that court does not apply to a suit removed from a state court.

It is no objection to the exercise of jurisdiction by a Circuit Court of the United States over a suit brought by an assignee of a contract, that the assignor is a citizen of the same State as the defendant, if the assignor was not a party to the suit at the time of its removal from the state court, and, being since made a party, disclaims all interest in the suit, and no further proceedings are had against him, and the complaint alleges that the defendant consented to the assignment.

A claim against a county, heard before the county commissioners, and on appeal from their decision by the circuit court of the county, under the statutes of Indiana, may be removed, at any time before trial in that court, into the Circuit Court of the United States, under Rev. Stat. § 639, cl. 3.

In an action brought against one party to a contract by an assignee, seeking to charge him by virtue of a contract of assignment from the other party and other facts, a complaint stating the same facts, not under oath, and signed by attorney only, in an action by the assignee against his assignor, is incompetent evidence of an admission by the plaintiff that he had no cause of action against this defendant.

In a State whose law allows an assignee of an entire contract, not negotiable at common law, to sue thereon in his own name, and an assignee of part of such a contract to sue thereon jointly with his assignor, or to sue alone if no objection is taken by demurrer or answer to the non-joinder of the assignor, an assignee has the like right to maintain such an action at law in the Circuit Court of the United States.

By a contract for the construction of a jail, under the statutes of Indiana, (which require all such contracts to be let to the lowest responsible

bidder, taking a bond from him for the faithful performance of the work,) the contractors agreed to construct the jail and to provide all the materials therefor within a certain time for the sum of $20,000, which the county commissiouers agreed to pay, partly in monthly payments on their architect's certificate, and the rest on the completion and acceptance of the building; and it was agreed that the county should not in any manner be answerable or accountable for any material used in the work; and that, if the contractors should fail to finish the work by the time agreed, they should pay $25 as liquidated damages for every day it should remain unfinished. The contractors assigned to a third person the obligation to do the iron work upon the jail, as if it had been awarded directly to him, and the right to recover therefor from the commissioners $7700 at the times mentioned in the original contract. The assignee did the work to the satisfaction of the commissioners, and to the value of $7700, but not within the time stipulated in the original contract. *Held,* that the assignment, though notified to the commissioners, if not assented to by them, did not render them liable to the assignee, or prevent them from making a settlement in good faith with the original contractors.

THE original suit was commenced March 4, 1885, by the Diebold Safe and Lock Company, a corporation of the State of Ohio, against the board of commissioners of Delaware County in the State of Indiana, by a claim in the form of a complaint, filed with the county auditor and by him presented to the board of county commissioners, in accordance with the provisions of the Revised Statutes of Indiana of 1881, (which are copied in the margin,[1]) and containing the following allegations:

---

[1] SEC. 5740. The auditor of the county shall attend the meetings of such commissioners, and keep a record of their proceedings; and the sheriff of the county shall also, by himself or deputy, attend and execute their orders.

SEC. 5742. Such commissioners shall adopt regulations for the transaction of business; and in the trial of causes they shall comply, so far as practicable, with the rules for conducting business in the circuit court.

SEC. 5758. Whenever any person or corporation shall have any legal claim against any county, he shall file it with the county auditor, to be by him presented to the board of county commissioners.

SEC. 5759. The county commissioners shall examine into the merits of all claims so presented, and may, in their discretion, allow any claim in whole or in part, as they may find it to be just and owing.

SEC. 5760. No court shall have original jurisdiction of any claim against any county in this state, in any manner except as provided for in this act.

SEC. 5761. No allowance shall be made by such commissioners, unless

That on January 20, 1882, the board of commissioners entered into a written contract with William H. Meyers and Edward F. Meyers, partners as W. H. Meyers & Son, a copy of which was annexed, showing that Meyers & Son agreed to construct a jail for the county on or before September 4, 1882, agreeably to the plans and specifications of a certain architect, and to provide all the materials therefor, for the sum of $20,000, which the board of commissioners agreed to pay, in monthly payments, on the architect's certificate, reserving on each payment twenty per cent, to be paid on the completion and acceptance of the building; Meyers & Son agreed to give bond to secure the performance of the agreement; and it was agreed that "the county will not in any manner be answerable to or accountable for any loss or damages that may happen in or to said works, or any part or parts thereof, respectively, or for any of the materials or other things used and employed in finishing and completing the said works;" and that, "should the contractors fail to finish the work on or before the time agreed upon, they shall pay to the party of

---

the claimant shall file with such commissioners a detailed statement of the items and dates of charge, nor until such competent proof thereof is adduced in favor of such claim as is required in other courts; but if the truth of such charge be known to such commissioners, it may be allowed without other proof, upon that fact being entered of record in the proceedings about the claim.

SEC. 5769. Any person or corporation, feeling aggrieved by any decision of the board of county commissioners, made as hereinbefore provided, may appeal to the circuit court of such county, as now provided by law.

SEC. 5774. The auditor shall make out a complete transcript of the proceedings of said board relating to the proceeding appealed from, and shall deliver the same, and all the papers and documents filed in such proceeding, and the appeal bond, to the clerk of the court to which the appeal is taken.

SEC. 5777. Every appeal thus taken to the circuit court shall be docketed among the other causes pending therein, and the same shall be heard, tried and determined as an original cause.

SEC. 5778. Such court may make a final determination of the proceeding thus appealed, and cause the same to be executed, or may send the same down to such board, with an order how to proceed, and may require such board to comply with the final determination made by such court in the premises.

the first part the sum of twenty-five dollars per diem for each and every day thereafter the said works shall remain unfinished, as and for liquidated damages."

That a part of the work to be done and materials furnished under the contract consisted of iron work; and that on March 6, 1882, Meyers & Son assigned to the plaintiff so much of that contract as related to this work, by an agreement in writing as follows:

"Fort Wayne, Ind., March 6th, 1882. We, the Diebold Safe and Lock Company, at Canton, O., hereby agree to construct and place in position in the new jail to be erected in the city of Muncie, Delaware Co., Ind., all of that portion of the work for same (locks included) and described under the head of iron and chrome-steel work in specifications and according to plans delineating them, as already adopted by the board of county commissioners of said county, the same as though the contract for such work had been awarded us direct; the contract price for said work to be seventy-seven hundred dollars ($7700) for above work, completed and accepted by the superintendent of the building and the county commissioners, to be paid by the said county commissioners in monthly estimates, less amount retained according to law and contract between the county commissioners and Wm. H. Meyers & Son, on completion of said work in full, as per amount named in this contract and charged by them against W. H. Meyers & Son, and in full settlement with them for such iron and chrome-steel work under their contract with the county commissioners; and any questions that may arise on the construction of the work or deviations from the plans and specifications, that may arise or be deemed advisable, to be arranged and settled wholly between ourselves and the county commissioners and the superintendent of the building. And we, the Diebold Safe and Lock Company, in consideration of the acceptance of the foregoing proposition by the said W. H. Meyers & Son, agree to do said work, and insure the same in perfect working order, according to the terms proposed, and to the acceptance of the said architect and county commissioners, and in such quantities and time as shall not materially interfere with the completion

of said building, and to complete the whole work on or before August 1st, 1882.

"DIEBOLD SAFE AND LOCK CO.

"We, the said W. H. Meyers & Son, named in the foregoing proposition, do hereby accept the same, and agree that the said Diebold Safe & Lock Company shall do and perform the work and labor and furnish the iron and chrome-steel work for said jail, in manner and form as proposed and agreed by them in the foregoing proposition and agreement, and that they shall receive payment therefor as proposed. Dated Fort Wayne, Ind., March 6th, 1882. "W. H. MEYERS & SON."

That the board of commissioners and the county had notice of and consented to this agreement and assignment when it was made, and before the jail was erected, and before any payments were made to Meyers & Son on account thereof; that the plaintiff, with the knowledge and consent of the board did the iron work and furnished the materials therefor, in accordance with the original contract of the board with Meyers & Son, and to the acceptance of the architect; that such work and materials were of the value of $7700, and Meyers & Son did the rest of the work upon the building; and that the board had not paid anything on account of the iron work, although the plaintiff had duly demanded payment therefor; and the plaintiff claimed payment of the sum of $7700.

The complaint contained a second paragraph, alleging the contract between the board of commissioners and Meyers & Son, its performance by Meyers & Son and its non-performance by the board, an assignment dated November 25, 1884, from Meyers & Son to the plaintiff of all their claims and demands against the board on account of building the jail, and that the sum of $10,000 was due on account thereof from the board to the plaintiff.

The board of commissioners disallowed the claim. The plaintiff appealed to the circuit court of the county; and immediately after the entry of the appeal in that court, and before further proceedings there, filed a petition and bond for the removal of the case into the Circuit Court of the United States, on the grounds that the plaintiff was a citizen of Ohio,

and the defendant a citizen of Indiana, and that by reason of prejudice and local influence the plaintiff could not have a fair trial in the state court.

The case having been entered on the equity docket of the Circuit Court of the United States, a motion was made by the defendant to remand the case to the state court, upon the ground that Edward F. Meyers, one of the plaintiff's assignors, was and always had been (as was admitted) a citizen of Indiana, (it being also admitted that William H. Meyers was and always had been a citizen of Michigan,) and that the petition for removal was filed too late, after the case had been tried and decided by the board of county commissioners, and been appealed to the circuit court of the county. The motion was denied.

The plaintiff then, by leave of the court made William H. Meyers and Edward F. Meyers parties defendant; and they appeared and answered, admitting the allegations of the complaint, and disclaiming all interest in the suit; and the record showed no further proceedings in regard to them.

A demurrer filed by the board of commissioners, upon the ground that the complaint did not state facts sufficient to constitute a cause of action, was overruled; the motion to remand the case to the state court was renewed, and again denied; and the defendant excepted to the overruling of its demurrer and to the denial of its motion to remand.

The board of commissioners then filed an answer, setting up the following defences:

1st. A denial of all the allegations of the complaint.

2d. Payment.

3d. Payment to Meyers & Son without notice of the pretended assignment of the contract to the plaintiff.

4th. Payment, before the assignment mentioned in the second paragraph of the complaint, to Meyers & Son, upon a settlement of accounts, and deducting damages for delay in the work.

5th. That, by the laws of Indiana, no contract for the building of a jail shall be let without giving notice by publication for at least six weeks in some newspaper of general circulation

in the county; the board of county commissioners is prohibited from entering into any contract for such building until the contractors have filed a bond with surety for the faithful performance of the work ; and all laborers or material-men may have an action on the bond for work done or materials furnished ; that the board took such a bond from Meyers & Son, which remained on file in the auditor's office, subject at all times to be sued upon by the plaintiff or any other laborer or material-man engaged in the construction of the jail ; that before the commencement of the suit, and long before the board had any notice of the assignment set out in the second paragraph of the complaint, the board fully settled its account with Meyers & Son, including the value of the work claimed to have been performed by the plaintiff, and paid the amount found to be due to Meyers & Son, after deducting damages for delay in completing the building; that the board could not by law enter into the contract which it was alleged in the first paragraph of the complaint to have entered into, or lawfully consent or agree to treat the plaintiff's agreement with Meyers & Son as an assignment of so much of their contract with the county, and never did in fact recognize or assent to it, or promise to pay the plaintiff, but always treated Meyers & Son as the only contractors with whom it had anything 'to do ; and that the plaintiff, having full knowledge of all the facts aforesaid, elected to rely wholly upon the responsibility of Meyers & Son for their pay in doing the work mentioned in the complaint, and on June 30, 1884, brought an action of assumpsit against Meyers & Son on the same cause of action, which was still pending.

6th. That the Circuit Court of the United States had no jurisdiction, because the plaintiff was a citizen of Ohio, the board of commissioners and Edward F. Meyers citizens of Indiana, and William H. Meyers a citizen of Michigan.

By agreement of the parties, and order of the court, the case was transferred to the law docket. A demurrer to the last three paragraphs of the answer was sustained, and the defendant excepted to the ruling. The plaintiff filed a replication, denying the allegations in the second and

third paragraphs of the answer. The second paragraph of the complaint was dismissed by the court upon the plaintiff's motion; and a trial by jury was had upon the issues of fact open upon the pleadings.

At the trial the plaintiff introduced in evidence the original contract of January 20, 1882, the bond given and taken therewith, and the agreement of March 6, 1882.

The plaintiff also introduced evidence tending to show that shortly after the execution of its agreement with Meyers & Son, and before any work had been done or money paid out on account of the construction of the jail, and while the board was in lawful session, engaged in transacting county business, oral notice was given to it by the plaintiff of the execution and provisions of this agreement, and the board made no objection to the agreement or assignment; that on December 6, 1882, the plaintiff's agent filed in the office of the auditor of the county a written copy of this agreement, together with a written notice to the board that the plaintiff expected to do the iron work, and to receive pay therefor directly from the board, in the same manner as Meyers & Son would have been entitled to do under their contract with the board, and that it would demand payment from the board of the sum of $7700 out of the contract price to be paid by the board for the construction of the jail; and that in April or May, 1883, before the plaintiff did the iron work and furnished the materials, the board, while in session, was notified orally by the plaintiff's agent and others of the execution and provisions of the agreement between Meyers & Son and the plaintiff.

On the other hand, the commissioners severally testified that they had no notice or knowledge of that agreement, or of the plaintiff's claim, until December 6, 1883. The auditor testified that there was no such notice in his office, and he had no recollection of any such notice having been filed there or brought to his knowledge. But the deputy auditor testified that a written claim, for $7700, presented by the plaintiff on account of said work and contract, was in the office before that date, and had been returned by him to the plaintiff by order of a member of the board.

It was proved, and not denied, that at all times prior to April and May, 1883, the board of commissioners had in the county treasury, of the fund provided for the erection of the jail and the payment of the contract price therefor, after deducting all payments made on account thereof, about $12,000, not taking into consideration any damages accruing to the county by reason of delay in completing the jail; that the value of the work then done did not exceed $7000 or $8000; that the plaintiff did all the iron work and furnished all the materials therefor according to the original contract and to the acceptance of the board of commissioners, and to the value of more than $7700, but not within the time stipulated in that contract; and that neither the plaintiff nor any person on his behalf had ever received anything in payment therefor, either from the board of commissioners or from Meyers & Son.

The plaintiff introduced evidence tending to show that the board of commissioners never paid to Meyers & Son or to their order, or to any one for their benefit, more than the sum of $13,000, on account of the construction of the jail.

The defendant introduced evidence tending to show that it had so paid out more than $18,000; that in the spring of 1883, after the work on the jail had progressed for some time, and about $8300 had been paid by the defendant to Meyers & Son, but before any of the iron work had been done, the defendant refused to pay any more money to Meyers & Son, and put one Parry in charge of the work; and that on September 5, 1883, the jail being then in a forward state of completion, a settlement was had between the board of commissioners and Meyers & Son, as a part of which it was agreed that the sum of $4500 should be considered as the damages sustained by the county for delay in completing the jail, and be deducted from the contract price, and the amount necessary to complete the jail was estimated, and the balance found to be due Meyers & Son was paid to them by the county, and the jail was taken off their hands by the board of commissioners; that at the time of that settlement the amount actually necessary to complete the jail, together with the aforesaid sum of $4500,

exceeded by more than $2000 the contract price of the jail; and that the plaintiff had then been engaged upon the iron work for a week, and completed that work on September 24, 1883.

The plaintiff introduced evidence tending to show that at the time of that settlement the defendant agreed in writing with Meyers & Son to pay them the sum of $2000, part of the aforesaid sum of $4500, in case one Secrist, who was then prosecuting a claim against the county for stone furnished to Meyers & Son for the jail, should not finally recover the same against the county, and that Secrist's suit was finally determined against him and in favor of the county by the judgment of the Supreme Court of Indiana, reported in 100 Indiana, 59, yet no part of the said sum of $2000 had ever been paid to Secrist or to any one else; that the actual damages sustained by the county on account of the delay in completing the jail did not exceed the sum of $25; and that the $4500 deducted from the contract price on account of such delay was not intended to be enforced against Meyers & Son.

The defendant offered evidence tending to show " that the settlement was made in good faith, and that the two thousand dollars which the defendant promised to pay Meyers & Son, in case the Secrist claim was defeated was not intended as a sham."

The complaint, signed by the plaintiff's attorneys, in an action brought June 30, 1884, by the plaintiff against Meyers & Son, setting forth the same facts as the complaint in the present case, and seeking to recover against Meyers & Son the sum of $7700 for work done upon the jail, was offered in evidence by the defendant, as tending to show that at that time the plaintiff did not claim to have any such demand as it now asserted against the present defendant. This evidence was objected to by the plaintiff, and excluded by the court; and to the ruling excluding it the defendant excepted.

The defendant requested the court to instruct the jury that, by the statutes of Indiana, contracts for the construction of county jails and other public buildings must be advertised and let by the board of county commissioners as an entirety, and

not in parts; and that the contract between the board of commissioners and Meyers & Son was not so divisible and assignable by the latter, that an assignment of a part thereof by them and mere notice given by the assignee to the board of commissioners of the assignment, obliged the board to recognize the assignment and to account and settle with and pay the assignee for work done and materials furnished by the assignee.

The court refused to give the instructions requested; and instructed the jury that the effect of the agreement between Meyers & Son and the plaintiff was to put the plaintiff into a position of being entitled to do the iron work and to get the pay therefor from the county; that Meyers & Son made no agreement to pay the plaintiff, and the plaintiff by doing that work acquired no right of action against Meyers & Son, but was entitled simply to look to the county; and that if the board of commissioners had notice of the agreement between Meyers & Son and the plaintiff before the settlement with Meyers & Son, the defendant was bound by that agreement, and obliged to withhold from Meyers & Son money enough to pay the plaintiff, and the plaintiff might maintain this action; and that if a copy of the contract was presented by the plaintiff and received by the auditor at his office, that was legal notice to the board of commissioners.

To this instruction, as well as to the refusal to give the instructions requested, the defendant duly excepted.

The court further instructed the jury that if the defendant, before and at the time of the settlement with Meyers & Son, had no notice of the plaintiff's claim, the plaintiff could not recover if the settlement was made in good faith; but that if the settlement was a sham, not intended as between the parties to be a settlement, the plaintiff might recover in this suit the sum in the defendant's hands owing to Meyers & Son under the original contract. No exception was taken to this instruction at the trial.

The jury returned a verdict for the plaintiff in the sum of $8739.50, upon which judgment was rendered; and the defendant sued out this writ of error.

*Mr. Addison C. Harris* and *Mr. William H. Calkins* for plaintiff in error.

*Mr. Levi Ritter, Mr. E. F. Ritter* and *Mr. B. W. Ritter*, for defendants in error, argued upon the merits of the case as follows:

It is urged that a part only of the contract could not be assigned without the consent of the county and that it is not liable to the plaintiff unless it assented to the assignment; that mere notice is not sufficient.

In Indiana it has been held in a number of cases that part of a contract may be assigned without the assent of a debtor *McFadden* v. *Wilson*, 96 Indiana, 253.

In *Harrison, Receiver*, v. *Wright*, 100 Indiana, 515, on pages 530, 531, it is said: " The rule that a chose in action, or a part of a chose in action, cannot be assigned, is the rule of law, but it is not the rule in equity, and still less is it the rule under modern statutes, which, as in this State, expressly authorize the assignments of choses in action, and direct that all actions shall be prosecuted in the name of the real party in interest. Under these statutes, no good reason is apparent why the assignee may not maintain an action at law."

" If, by the assignment, the assignee acquires a legal right, it is by force of the statute, without regard to the assent of the debtor or holder of the fund. If he acquires an equitable assignment or right simply under the rules in equity, this right is independent of any assent by the debtor or holder of the fund." See, also, *Indiana Manufacturing Co.* v. *Porter*, 75 Indiana, 428; *Bartholomew County* v. *Jameson*, 86 Indiana, 154, 165; *Louisville & St. Louis Railroad* v. *Caldwell*, 98 Indiana, 245; *Wood* v. *Wallace*, 24 Indiana, 226; *Lapping* v. *Duffy*, 47 Indiana, 51; *Groves* v. *Ruby*, 24 Indiana, 418; *Hays* v. *Branham*, 36 Indiana, 219.

From these cases it will be seen that in Indiana at least an assignment of a part of a fund may be made without the assent of the debtor. And this is the rule elsewhere as well. See *Laughlin* v. *Fairbanks*, 8 Missouri, 367, 371; *Anderson* v. *Van Alen*, 12 Johns. 343; *Russell* v. *Fillmore*, 15 Vermont,

130; *Field* v. *New York,* 6 N. Y. 179; *S. C.* 57 Am. Dec. 435; *Moody* v. *Kyle,* 34 Mississippi, 506; *Corser* v. *Craig,* 1 Wash. C. C. 424; *Patten* v. *Wilson,* 34 Penn. St. 299; *Lyon* v. *Summers,* 7 Connecticut, 399.

The rule that a partial assignment could not be made without the consent of the debtor never amounted to more than that without such consent the assignee could not maintain an action in his own name.

It was within the power of Meyers & Son to assign an interest in the contract with the county, together with a portion of the money due therefor. The fact that they were required to give bond for the performance of the work does not affect this right. Their bond remained in force as well after the assignment as before. They were still liable to the county upon their contract and bond, and the county was not injured by the assignment. We cite the court to the following cases, some of which have been cited in support of other positions herein: *Field* v. *New York,* 6 N. Y. 179; *S. C.* 57 Am. Dec. 435; *Devlin* v. *New York,* 63 N. Y. 8; *Dannant* v. *Comptroller,* 77 N. Y. 45.

These are all cases of partial assignments and cover this case. See, also, as in point: *Parker* v. *City of Syracuse,* 31 N. Y. 376, 379; *Horner* v. *Wood,* 23 N. Y. 350; *Taylor* v. *Palmer,* 31 California, 241; *Cochran* v. *Collins,* 29 California, 129, 131; *Morse* v. *Gilman,* 18 Wisconsin, 373; *Gee* v. *Swain,* 12 Wisconsin, 450; *Ernst* v. *Kunkle,* 5 Ohio St. 520; *Bradley* v. *Root,* 5 Paige, 632; *Pendleton* v. *Perkins,* 49 Missouri, 565; *Brackett* v. *Blake,* 7 Met. 335; *S. C.* 41 Am. Dec. 442.

The right to assign contracts with, or claims against, municipal corporations is recognized in Indiana. *Board* v. *Jameson,* 86 Indiana, 154; *Smith* v. *Flack,* 95 Indiana, 116; *Coquillard* v. *French,* 19 Indiana, 274.

Mr. Justice Gray, after stating the case as above, delivered the opinion of the court.

Before proceeding to consider the merits of this case, it is necessary to dispose of the objections taken to the jurisdiction assumed by the Circuit Court of the United States.

1. It was contended that that court had not cognizance of the suit, because the plaintiff's assignors could not have prosecuted it, inasmuch as one of them was a citizen of the same State as the defendant. But that restriction was applicable only to suits commenced in the federal court, and did not extend to suits removed into it from a state court. Act of March 3, 1875, c. 137, §§ 1, 2, 18 Stat. 470; *Claflin* v. *Commonwealth Ins. Co.*, 110 U. S. 81.

2. It was further objected that the assignors were necessary parties to the suit, because they had assigned to the plaintiff part only of their original contract with the defendant; and because the statutes of Indiana, while they require every action arising out of contract to be prosecuted by the real party in interest, provide that "when any action is brought by the assignee of a claim arising out of a contract, and not assigned by endorsement in writing, the assignor shall be made a defendant, to answer as to the assignment or his interest in the subject of the action." Indiana Rev. Stat. of 1881, §§ 251, 276. But this objection was rather to the nonjoinder of defendants than to the jurisdiction of the court, and presented no valid reason why the court should not proceed. The assignors were not parties to the suit at the time of the removal into the Circuit Court; and as soon as they were made parties in that court, they disclaimed all interest in the suit; and as no further proceedings were had, or relief sought or granted, against them, their presence was unnecessary. *Walden* v. *Skinner*, 101 U. S. 577; *Morrison* v. *Ross*, 113 Indiana, 186. Besides, the first paragraph or count of the complaint (upon which alone the trial proceeded) alleged that the defendant not only had notice of the assignment to the plaintiff, but consented to that assignment. If that were so, there would be a new and direct promise from the defendant to the plaintiff, and the assignors would be in no sense parties to the cause of action.

3. It was also objected that the petition for removal was filed too late, after the case had been tried and determined by the board of county commissioners. But under the statutes of Indiana then in force, although the proceedings of county commissioners, in passing upon claims against a county, are in

some respects assimilated to proceedings before a court, and their decision, if not appealed from, cannot be collaterally drawn in question, yet those proceedings are in the nature, not of a trial *inter partes*, but of an allowance or disallowance, by officers representing the county, of a claim against it. At the hearing before the commissioners, there is no representative of the county, except the commissioners themselves; they may allow the claim, either upon evidence introduced by the plaintiff, or without other proof than their own knowledge of the truth of the claim; and an appeal from their decision is tried and determined by the circuit court of the county as an original cause, and upon the complaint filed before the commissioners. Indiana Rev. Stat. §§ 5758–5761, 5777.; *State* v. *Washington Commissioners,* 101 Indiana, 69; *Orange Commissioners* v. *Ritter,* 90 Indiana, 362, 368. It follows, according to the decisions of this court in analogous cases, that the trial in the Circuit Court of the county was "the trial" of the case, at any time before which it might be removed into the Circuit Court of the United States, under clause 3 of section 639 of the Revised Statutes. *Boom Co.* v. *Patterson,* 98 U. S. 403; *Hess* v. *Reynolds,* 113 U. S. 73; *Union Pacific Railway* v. *Kansas City,* 115 U. S. 1, 18; *Searl* v. *School District,* 124 U. S. 197, 199.

The only ruling upon evidence, which is excepted to, is to the exclusion of the complaint in an action brought by the present plaintiff against its assignors. But there is no material difference between the facts stated in that complaint and those stated in the complaint in the present suit; and the former complaint, not under oath, nor signed by the plaintiff, but only by its attorneys, was clearly incompetent to prove an admission by the plaintiff that upon those facts it had not a cause of action against this defendant. *Combs* v. *Hodge,* 21 How. 397; *Pope* v. *Allis,* 115 U. S. 363; *Dennie* v. *Williams,* 135 Mass. 28.

We are then brought to the main question of the liability of the defendant to the plaintiff, depending upon the validity and effect of the partial assignment to the plaintiff from the original contractors of their contract with the defendant.

By the law of Indiana, the assignee by a valid assignment of an entire contract, not negotiable at common law, may maintain an action thereon in his own name against the original debtor; and the assignee by valid assignment of part of a contract may sue thereon jointly with his assignor, or may maintain an action alone if no objection is taken by demurrer or answer to the nonjoinder of the assignor. Indiana Rev. Stat. § 251; *Groves* v. *Ruby*, 24 Indiana, 418. These rules govern the practice and pleadings in actions at law in the federal courts held within the State. Rev. Stat. § 914; *Thompson* v. *Railroad Companies*, 6 Wall. 134; *Albany & Rensselaer Co.* v. *Lundberg*, 121 U. S. 451; *Arkansas Co.* v. *Belden Co.*, 127 U. S. 379, 387. The case at bar was therefore rightly treated by the court below as an action at law; and the real question in controversy is not one of the form of pleading, but whether the plaintiff has any beneficial interest as against the defendant in the contract sued on.

A contract to pay money may doubtless be assigned by the person to whom the money is payable, if there is nothing in the terms of the contract which manifests the intention of the parties to it that it shall not be assignable. But when rights arising out of contract are coupled with obligations to be performed by the contractor, and involve such a relation of personal confidence that it must have been intended that the rights should be exercised and the obligations performed by him alone, the contract, including both his rights and his obligations, cannot be assigned without the consent of the other party to the original contract. *Arkansas Co.* v. *Belden Co.*, 127 U. S. 379, 387, 388. And the fact that that party is or represents a municipal corporation may have a bearing upon the question whether the contract is assignable, in whole or in part, without its assent

By the Revised Statutes of Indiana, it is the duty of the county commissioners to cause jails and other county buildings to be built and furnished, and to keep them in repair. Indiana Rev. Stat. § 5748. But they are forbidden to contract for the construction of any building, the cost of which exceeds $500, except upon public advertisement for bids and

to the lowest responsible bidder, and taking from him a bond with sureties to faithfully perform the work according to the contract, and to promptly pay all debts incurred by him in the prosecution of the work, including labor and materials furnished; and any laborer or material-man having a claim against the contractor may sue upon that bond. Indiana Rev. Stat. §§ 4244, 4247.

. It has been held by the Supreme Court of Indiana that the only remedy of laborers and material-men is against the contractor, or upon his bond, and that they have no lien upon the building, or right of action against the county; as well as that a county cannot be charged by process in the nature of garnishment or foreign attachment for the debts of its creditors to third persons; and the reason assigned in each class of cases is, that it would be contrary to public policy that a county should be involved in controversies and litigations between its contractors and their creditors. *Parke Commissioners* v. *O'Conner*, 86 Indiana, 531; *Secrist* v. *Delaware Commissioners*, 100 Indiana, 59; *Wallace* v. *Lawyer*, 54 Indiana, 501.

In *Bass Foundry* v. *Parke Commissioners*, 115 Indiana, 234, where a contractor, to whom the county commissioners had let a contract for the construction of a court-house and jail, sublet the iron work to the plaintiff, and, after partially completing the buildings, abandoned the work and declared his inability to resume it; and it was alleged in the complaint, and admitted by demurrer, that the commissioners agreed with the plaintiff to pay it for such work; it was held that it was within the incidental power of the commissioners, without letting a new contract, to take charge of the work and complete the building, and to bind the county to pay the plaintiff the actual and reasonable value of iron work done by him at their request; but that they had no power to assume, on behalf of the county, debts due from the contractor to the plaintiff; and the court, after referring to the statutes above cited, said: "In the event that a contractor should abandon his contract when the work was at such an incipient stage as that to complete it would amount practically to the construction of a court-house by county commissioners, without regard to the contract

previously let, it might be a question whether the contracts made by them for labor and materials would be binding as such upon the county." 115 Indiana, 243.

In *Bartholomew Commissioners* v. *Jameson*, 86 Indiana, 154, cited for the plaintiff, the assignment was of an entire sum due to the assignor for personal services. In *Smith* v. *Flack*, 95 Indiana, 116, likewise cited for the plaintiff, the municipality was not a party to the suit, nor were its rights or liabilities brought in question; but the controversy was upon the effect of an assignment as between the parties to it and persons claiming under them.

In the case at bar, by the original contract between Meyers & Son and the county commissioners, the contractors agreed to construct a jail for the county, and to provide all the materials therefor, for a gross sum of $20,000, which the commissioners agreed to pay, partly in monthly payments on their architect's certificate, and the rest upon the completion and acceptance of the building; and it was expressly agreed that the county should not in any manner be answerable or accountable for any materials used in the work; and also that, if the contractors should fail to finish the work by the time agreed on, they should pay to the commissioners, as and for liquidated damages, the sum of twenty-five dollars for every day the work should remain unfinished. Meyers & Son executed a bond for their faithful performance of the contract, as required by the statute.

By the subsequent assignment, to which neither the county nor the board of commissioners was a party, Meyers & Son undertook to assign to the plaintiff the obligation to construct and put in place in the jail all the iron work required by the original contract, as if the contract for such work had been awarded directly by the commissioners to the plaintiff; and undertook to fix the contract price for such work at $7700, to be paid by the commissioners at the times mentioned in the original contract.

The plaintiff in fact did the iron work according to the original contract and to the acceptance of the commissioners, and to the value of more than $7700, but not within the time

stipulated in that contract. Soon after the plaintiff began to do that work, the commissioners made a settlement with the original contractors, which, if valid, left in their hands much less than that sum.

The court declined to instruct the jury, as requested by the defendant, that the statutes of Indiana required contracts for the construction of jails and other county buildings to be advertised and let by the board of commissioners as an entirety, and not in parts; and that the contract between Meyers & Son and the board of commissioners was not divisible and assignable by the contractors, and their assignment of part of the contract to the plaintiff and mere notice thereof to the board did not impose any obligation upon the board to recognize the assignment, and to account and settle with and pay the plaintiff for work done and materials furnished by the latter.

There was conflicting evidence upon two points: 1st. Whether the commissioners before the settlement had notice of the assignment to the plaintiff; 2d. Whether the settlement was made in good faith. The judge instructed the jury that the plaintiff was entitled to recover, either if the defendant had such notice, or if the settlement was in bad faith. Exceptions were taken to the refusal to give the instruction requested, and to the instruction given upon the first alternative only. But it cannot be known on which alternative the jury proceeded in coming to their verdict. Upon the evidence before them and the instructions given, they may have concluded that the settlement between the defendant and the original contractors was in perfect good faith, and left in the defendant's hands much less than the sum claimed by the plaintiff, and that the defendant never assented to any assignment or division of the contract, and may have found for the plaintiff upon the single ground that they were satisfied that the defendant had notice of the assignment. The decision of the case therefore turns on the correctness of the instructions refused and given upon the effect of the assignment and notice.

This case does not require us to consider whether an assign-

ment of the entire contract for the construction of the jail would have been consistent with the intention of the parties as apparent upon the face of the contract, or with the intention of the legislature as manifested by the statutes under which the contract was made. The plaintiff claims under no such assignment.

Those statutes and the judicial exposition of them by the Supreme Court of the State, as well as the terms of the contract itself, are quite inconsistent with the theory that the original contractors can, at their pleasure, and without the assent of the county commissioners, split up the contract and assign it in parts, so as to transfer to different persons or corporations the duty of furnishing different kinds of material and labor, and the right of recovering compensation for such material and labor from the county commissioners.

Both the statutes and the contract contemplate that the county commissioners shall be liable only to the contractors for the whole work, and not to any persons doing work or supplying materials under a subcontract with them.

The original contract of the county commissioners was for the construction by Meyers & Son of the building as a whole by a certain date; for the payment to them by the commissioners of a gross sum of $20,000 for such construction, upon an accounting with them from time to time; and for the payment by the contractors of twenty-five dollars, as liquidated damages, for every day that the building should remain unfinished beyond that date.

The assignment was not in the nature of a mere order for the payment of a sum of money; but it was of that part of the contract which related to the iron work, and required the assignee to perform this part of the work, and assumed to fix at the sum of $7700 the compensation for this part, which the assignee should receive from the commissioners. There is nothing, either in the original contract, or in the evidence introduced at the trial, to show what proportion the iron work bore to the rest of the work requisite for the construction and completion of the jail, or that any separate estimate of the cost or value of the iron work was contemplated by the

original contract, or ever made by the defendant, or by any officer or agent of the county.

In short, the only agreement which the county commissioners were proved to have made was with Meyers & Son, to pay them a gross sum of $20,000 for the whole work upon an accounting with them, and Meyers & Son paying damages as agreed for any delay in its completion. The agreement of Meyers & Son with the plaintiff assumed to compel the commissioners to pay the plaintiff, for its performance of part of the work, a definite sum of $7700, and made no provision for damages for delay, and thus undertook to fix a different measure of compensation from the original contract.

The facts that the iron work was done by the plaintiff to the acceptance of the commissioners, though after the time stipulated in the original contract, and was of the value of more than $7700, did not conclusively prove, as matter of law, that the commissioners, on behalf of the county, made or recognized any contract with or liability to the plaintiff, in the place and stead of its assignors and employers; or preclude the commissioners from insisting on the right to pay no more than the amount due, according to the original contract, for the whole of this and other work necessary to complete the building, and to ascertain the amount so due by an accounting and settlement with Meyers & Son, in which the sum due for all kinds of work, as well as the stipulated damages for any delay in completing the building, could be taken into consideration.

The county commissioners could not, without their consent, and at the mere election of the original contractors and their subcontractors and assignees, be compelled to account with the latter separately, or be charged with a separate obligation to pay either of them a part of the entire price, instead of accounting for and settling the whole matter with the original contractors.

It might be within the authority of the commissioners, upon becoming satisfied that Meyers & Son, after having performed a substantial part of their original contract, were unable to complete it, to give their consent to such an agreement with the plaintiff as was described in the assignment; and it is

possible that the jury would have been authorized upon the evidence to find such a consent.

But the difficulty with the instructions given to the jury is, that no question of such consent was submitted to or determined by them; and that they were in effect instructed, in direct opposition to the request of the defendant, that mere notice to the defendant of the assignment to the plaintiff would prevent the defendant from afterwards making a settlement with the original contractors in good faith and according to the sums justly due by the terms of the contract from either party to the other, without retaining in its hands enough to pay the plaintiff's claim. This instruction held the defendant bound by a contract to which it was not proved to have ever assented, and requires a new trial to be granted.

The cases in other States, cited for the plaintiff, in which municipal corporations have been held liable to an assignee of a contract, upon notice of the assignment, without proof of their consent, expressed or implied, are distinguishable from the case before us, and quite consistent with our conclusion.

In some of them, the assignments were of the whole or part of money already due, or to become due, to the contractor, in other words, assignments of a fund, and not of any obligation to perform work. *Brackett* v. *Blake*, 7 Met. 335; *Field* v. *New York*, 6 N. Y. 179; *Hall* v. *Buffalo*, 1 Keyes, 193; *Parker* v. *Syracuse*, 31 N. Y. 376; *People* v. *Comptroller*, 77 N. Y. 45. In others, the assignments were of entire contracts for the labor of convicts, or for work upon streets, which were held, from the nature of the subject, to imply no personal confidence in the contractor. *Horner* v. *Wood*, 23 N. Y. 350; *Devlin* v. *New York*, 63 N. Y. 8; *Ernst* v. *Kunkle*, 5 Ohio St. 520; *St. Louis* v. *Clements*, 42 Missouri, 69; *Taylor* v. *Palmer*, 31 California, 241.

The plaintiff much relied on a decision of the Supreme Court of Pennsylvania, in a case in which a contractor to build a school-house for a city assigned his right to all moneys due or to become due under it; the city, with notice of the assignment, and after the school-house had been built by the assignees and accepted and occupied by the city, paid the last

instalment of the price to the original contractor; there was no controversy as to the performance of the work, or as to the amount to be paid, but only as to the person entitled to receive payment; and the court, treating the assignment as one of money only, held the assignee entitled to recover against the city. *Philadelphia* v. *Lockhardt*, 73 Penn. St. 211, 216.

On the other hand, that court, speaking by the same judge, in a case decided within five years afterwards, and more nearly resembling the one now before us, where a contractor for building a bridge assigned all his interest in the contract, "except the item of superstructure," to one who had expended money upon the bridge, held that such a partial assignment of the contract, though notified to the city, did not make it liable to the assignee, because "the policy of the law is against permitting individuals, by their private contracts, to embarrass the financial affairs of a municipality." *Philadelphia's Appeal*, 86 Penn. St. 179, 182. See also *Geist's Appeal*, 104 Penn. St. 351, 354.

It thus appears that the Supreme Court of Pennsylvania has taken the same view as the Supreme Court of Indiana, as already shown, holding it to be against public policy to permit municipal corporations, in the administration of their affairs relating to the construction of public works, to be embarrassed by sub-contracts between their contractors and third persons, to which they have never assented.

*Judgment reversed, and case remanded with directions to set aside the verdict and order a new trial, and to take such further proceedings as may be consistent with this opinion.*