939 F.2d 654
 Bankr. L. Rep. P 74,131
In re DA-SOTA ELEVATOR CO. f/k/a Dakota-Minnesota Elevator
Co., Debtor.
Wayne DREWES, Bankruptcy Trustee for Da-Sota Elevator Co.,
Plaintiff/Appellee,
v.
FM DA-SOTA ELEVATOR CO., GF Da-Sota Co., and Grand Forks
Elevator Co., Defendant/Appellant.
 No. 90-5514ND.
 United States Court of Appeals,
Eighth Circuit.
 Submitted March 15, 1991.
Decided July 30, 1991.
 
 1
 Timothy P. Hill, Fargo, N.D., for defendant/appellant.
 
 
 2
 Kip M. Kaler, Fargo, N.D., for plaintiff/appellee.
 
 
 3
 Before JOHN R. GIBSON and BOWMAN, Circuit Judges, and DUMBAULD*, Senior District Judge.
 
 
 4
 DUMBAULD, Senior District Judge.
 
 
 5
 The nub of the controversy in the case at bar is whether certain elevator-maintenance contracts create rights sufficiently similar to property rights to be treated as assets of a bankrupt estate; and, if so, whether the assets were preferentially conveyed to insiders for "less than a reasonable equivalent value" in violation of 11 U.S.C. 548(a)(2).[1] On plenary review of the first question as an issue of law, and of the second (as to valuation of the property as a question of fact) where the District Court's determination is supported by substantial and sufficient evidence, we affirm.[2]
 
 
 6
 * The bankrupt corporation, Da-Sota Elevator Company (hereinafter sometimes referred to as Da-Sota) was formed in 1986, its stock being owned equally by Richard Benson et ux. and Tom Murdorff et ux. Their business was maintenance of elevators. Benson managed the Grand Forks, N.D. branch and Murdorff the Fargo, N.D. branch.
 
 
 7
 On October 25, 1989, Da-Sota sold its assets, including certain maintenance contracts, to separate companies: Grand Forks Elevator (owned by Benson) and FM Da-Sota (owned by Murdorff). The agreement of sale provided that the buyers did not assume debts of the seller. Apparently Benson continued to provide satisfactory service through his company to Grand Forks customers, but many customers terminated their contracts with Da-Sota.
 
 
 8
 On November 22, 1989 (less than a year after the transfer of assets) Da-Sota filed its petition in bankruptcy. On January 31, 1990, the trustee for the debtor's estate filed suit to avoid and set aside the transfer.[3] The District Court,[4] sitting in bankruptcy, entered judgment for avoidance of the transfer of the service contracts, and awarding the trustee for Da-Sota Elevator Company under 11 U.S.C. 550(a)[5] the sum of $90,000.00 against each of the defendants FM Da-Sota Elevator Co. and Grand Forks Elevator Co.
 
 
 9
 Appellant contends that the elevator contracts were not an assignable "interest ... in property" because they are personal service contracts, citing Delaware County Commissioners v. Diebold Safe and Trust Co., 133 U.S. 473, 488, 10 S.Ct. 399, 403, 33 L.Ed. 674 (1890); and Burck v. Taylor, 152 U.S. 634, 651-52, 14 S.Ct. 696, 702-03, 38 L.Ed. 578 (1894).
 
 
 10
 The locus classicus or paradigmatic example of personal service is the celebrated English precedent of Lumley v. Wagner, 1 De G., M. & G. 604, 619, 622 (Ch.App.1852). It involved a then prominent opera singer.[6] A current example would be a contract for Luciano Pavarotti to appear in the Twin Cities.[7] The parties and the public would have contemplated and bargained for that particular artist and no other would be expected to take his place as a performer at "showtime."
 
 
 11
 In other words, the specific expertise of a particular artist is the subject-matter of the contract. Unique talent is involved; the performers are not fungible.
 
 
 12
 The same would be true of top-flight talent in other professions. A tort plaintiff hiring Melvin Belli or a famous surgeon would look askance at substitution of lesser luminaries.
 
 
 13
 On the other hand, we are persuaded that elevator maintenance is a more routine commercial function. It does not require outstanding genius. There are many competent competitors in the North Dakota market.
 
 
 14
 No doubt skilled workmanship and sound management practices are conducive to success in any field of endeavor. No doubt, as counsel eloquently contends, customers turn to Mr. Benson with confidence, and eschew entrusting their elevator maintenance work to any Tom, Dick or Harry who turns up as the highest bidder at an auction to be held by a trustee in bankruptcy.
 
 
 15
 But undoubtedly elevator maintenance contracts do have some commercial value. For the duration of the short-term contracts involved in the case at bar, building owners might not change their customary operatives, and having a foot in the door would permit holders of the contract to demonstrate their skill and reliability during a probation period, thus warranting future continuance of an advantageous business relationship.
 
 
 16
 The reality and truth of the matter is that maintenance contracts do have value and are properly includible as assets of a bankrupt's estate.
 
 
 17
 The rationale of recognizing the asset value of these elevator contracts is a fortiori than the spes or hope of having a defunct liquor license reinstated which the Third Circuit recently decided was appropriately to be treated as an asset of a bankruptcy estate. In Re: Daniel Nejberger, d/b/a Piccolo's Famous Pizza and Il Pastaio, 934 F.2d 1300 (Third Circuit, 1991) involved a license which had already expired.
 
 
 18
 Though recognizing that the Pennsylvania Liquor Code expressly declared that the license was not property and that it was not subject to attachment, execution, or lien under the Uniform Commercial Code, Judge Weis[8] points out that
 
 
 19
 the state courts have recognized that a liquor license has value ... [I]n practice, a liquor license can be bought and sold in the market place....
 
 
 20
 The reality is that in Pennsylvania a liquor license does have value. We are persuaded, therefore, that it is appropriately considered property of the estate within the broad definition of section 541 of the Bankruptcy Act. The Court of Appeals of the Sixth Circuit came to the same conclusion in a case construing a similar Ohio Statute. 934 F.2d at 1302.
 
 
 21
 We conclude therefore that the elevator maintenance contracts in the case at bar constitute a property "interest" of the bankrupt, properly includible in its bankruptcy estate, and that transfer of such interest is subject to avoidance under 11 U.S.C. 548(a)(2).
 
 II
 
 22
 We turn then to the question whether Da-Sota received a reasonable equivalent value when it (the insolvent corporation) transferred its assets to two other business entities each owned by one of its two stockholders.
 
 
 23
 On this issue we accord due deference to the District Court, which carefully evaluated a voluminous record. There were many witnesses, expressing many divergent views. The witnesses agreed in saying that it was difficult to place a definite value on these evanescent contracts; and that there were many subjective factors involved. Some of the witnesses were involved in competing businesses, and might have made higher offers with the hope of eliminating competition from Da-Sota's two successor companies.
 
 
 24
 As in all types of valuation cases, the value of the maintenance contracts in the case at bar is a question of fact, to be resolved by the trier of fact. Questions of credibility and weight of the evidence are for resolution by the trier of fact. We are satisfied that the District Court carefully and conscientiously weighed and evaluated the evidence of record, and reached a reasonable determination based upon substantial and sufficient evidence, and not clearly erroneous.
 
 
 25
 The judgment of the District Court is therefore
 
 
 26
 AFFIRMED.
 
 
 
 *
 Honorable Edward Dumbauld, Senior United States District Judge for the Western District of Pennsylvania, sitting by designation
 
 
 [1]
 It is there provided:
 (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor--
 (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
 (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insolvent as a result of such transfer or obligation.
 
 
 [2]
 Certain minor matters may be mentioned and disposed of in limine. Appellant argues that the elevator contracts were "executory" contracts which the trustee would have had to assume or reject within 60 days under 11 U.S.C. 365(d) but has not done so. That is beside the point, because executory contracts are assumed to be valid and existing agreements, as to which the trustee has discretion to determine whether or not their continuance in force is advantageous vel non to the bankruptcy estate. But contracts whose avoidance is sought under 11 U.S.C. 548(a)(2) differ toto caelo from such concededly valid and existing executory contracts. In Sec. 548 proceedings the trustee's contention is that the contracts were transferred by an invalid and inoperative transaction
 Appellant also argues that defendants should be permitted to reassign the maintenance contracts to the plaintiff in partial satisfaction of the money judgments against them. The District Court rightly exercised its discretion under 11 U.S.C. 550(a) to permit the trustee to recover the value [see note 5, infra ] of the property transferred rather than the property itself. The maintenance contracts were sort of a "wasting asset," deteriorating in value as customers canceled their contracts with the debtor Da-Sota and chose to transfer their business to defendants. Fairness to creditors requires collection by the trustee of the value of the contracts at the time of transfer to defendants, of which value defendants obtained the benefit and should reimburse the estate accordingly.
 
 
 [3]
 The parties stipulated that Da-Sota was insolvent under 11 U.S.C. 548(a)(2)(B)(i)
 
 
 [4]
 The Honorable Paul Benson, Senior District Judge of the District of North Dakota
 
 
 [5]
 That Section provides, in pertinent part:
 (a) Except as otherwise provided in this section to the extent that a transfer is avoided under section ... 548 ... of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from--
 (1) the initial transferee of such transfer or the entity for whose benefit such transfer was made.
 
 
 [6]
 Johanna Wagner, who had contracted to sing exclusively for plaintiff during a certain period of time during which she agreed not to sing at any other theatre, was enjoined from singing for Gye, a competitor, although specific performance of her contract with Lumley could not be decreed because it was for personal service
 A cognate case, Lumley v. Gye, 2 E. & R. 216(Q.B.1853), allowed recovery against a competing theatre which induced Johanna Wagner to break her contract with plaintiff.
 
 
 [7]
 The example comes to mind because some of the members of the Court during the current session saw Pavarotti and his party leave the hotel for the hall in two Mercedes Benz automobiles
 
 
 [8]
 The writer of this opinion cites with pride this timely and pertinent decision of a former colleague as District Judge in the Western District of Pennsylvania, now a Senior Circuit Judge, who recently served as chairman of the Federal Courts Study Committee appointed by the Chief Justice pursuant to Sec. 103 of the Act of November 19, 1988, 102 Stat. 4644