Jenkins, District Judge.
The American Paper-Bag Company, being the owner of certain letters patent of the United States on the construction of machines for the manufacture of satchel bottom paper bags, on the 16th day of June, 1884, contracted in writing with the defendants in error and one H. J. Rogers to deliver to them on lease and license 12 such patented machines, for which a stipulated price was to be paid. The defendants agreed to accept and to execute, on their part, a license for the use of such machinery, of which a copy was annexed to the contract, “and thereafter to pay the license fee, and to perform all other terms and conditions as specified in such license.” The plaintiff agreed to grant a license for the use of the machinery so leased “according to the said copy hereto annexed.” The proposed license annexed to the contract provided, inter alia, that an account should be kept of all bags made by the lessees, “or by any other person for them or for others,” by the aid of the leased machines, and that the lessees should pay a royalty of 5 cents for every 1,000 bags so made, payable as expressed. The machines were delivered in December, 1884, and were operated until their destruction by fire in March, 1886. The action was brought to recover the stipulated royalty upon the 150,000,000 bags alleged to have been manufactured during that period by the aid of such machines. A trial by jury was waived. Upon the hearing in the court below, at the conclusion of the plaintiff’s case, no counter evidence being offered, defendants moved the court to strike out and exclude all the evidence, as not tending to sustain the issue on the part of the plaintiff. The court sustained the motion, to which ruling the plaintiff duly excepted. This ruling and exception authorize a review of the evidence so far as essential to the question whether the facts proven made a prima facie case sufficient, in the absence of counter evidence, to justify a recovery by the plaintiff. The record does not disclose the precise ground of decision. It is said here that it proceeded upon the theory of a novation. The decision is also sought to be sustained upon the ground that the machines were not delivered to the defendants, were not operated by them, and that no license was tendered to or executed by the defendants.
1. We are satisfied that the theory of a novation cannot be sustained. We search the record in vain for evidence to uphold such contention. It appears that the defendants, soon after the execution of the contract in question, organized the Western Paper-Bag Company, to which company these machines were delivered, and by such company they were operated. The defendants were the officers and managers of that company, and, so far as disclosed by the record, the only persons interested therein. The correspondence with the plaintiff was conducted by the several defendants, at times in an individual capacity and at times in a representative capacity, as officers of the company. We find therein no suggestion that the company should assume any liability of the defendants upon the contract, no promises to pay such liability, no consent to substitution on the part of the plaintiff, no release of the defendants. It is essential to a novation, by substitution of a new debtor, that the original debtor be discharged, and that the substitute assume and be bound for *754 the debt. There must concur the intervention of a new debtor accepted by the creditor for and in release of the original debtor. This is elementary. It is said that consent, substitution, and release are to be inferred from the fact that delivery of the machines was made by the plaintiff to the Western Paper-Bag Company, and that the use of the machines for which royalty is here sought was by the company, and not by the defendants individually. Those facts go to the question of liability of the defendants under the contract, and are considered further on; but, standing alone, they are not sufficient to work a novation. Delivery of the machines to the company without consent of the defendants would work a failure of contract by the plaintiff, not a substitution of debtor. Delivery by the procurement or consent of the defendants is in fulfillment of the contract, not of itself availing to discharge the original debtor. The same is true with respect to liability for royalty for use of the machines. The defendants covenanted to pay royalty on all bags made by them, “or by any other person for them or for others.” If such use by the company was by the procurement or consent of the defendants, their liability under the contract would not thereby be affected, unless there existed the other necessary conditions of a novation. If such use was without the consent of the defendants, delivery of the machines being also without their consent, there would be no liability under their contract. There would be no debt to be assumed, and no need to invoke the doctrine of novation. If the Western Paper-Bag Company, by reason of the possession and use of the machines, ought equitably to indemnify the defendants for their liability to the plaintiff for such use, that would not avail as a novation. Indemnification is not substitution. Nor would the defendants be discharged—being otherwise liable—if the paper-bag company, by reason of the use of the machines, with knowledge of the terms of the contract and license, were also bound to respond to the plaintiff for the royalties here sought to be recovered. Addition is not substitution. In such case the one party is bound by reason of contract stipulation; the other, if liable at all, upon equitable considerations for the use of another’s property and protected right. Nor would it avail to a novation if the Western Paper-Bag Company had expressly agreed with the defendants to discharge their liability to the plaintiff. Assumption of liability is not novation unless there concur the consent of the creditor to accept the company in lieu of the defendants and a discharge of the latter. Such consent cannot be implied merely from the delivery of the machines by the plaintiff to and their use by the company. Such delivery and use may well consist with the continued liability of the- defendants under their contract; may well speak the disinclination of the plaintiff to trust the company for accruing royalties, and a looking to and reliance upon the defendants to respond under the terms of the contract. The inference of a novation sought to be drawn merely from such delivery and use is repelled by the fact that the defendants were the only officers of the company and the only persons interested therein. It is not reasonable to infer that the plaintiff would, without motive and against its interest, discharge the personal liability *755 of the defendants for the doubtful responsibility of a corporation of whose financial condition it had no knowledge, and of whose existence it was only inferentially informed. There are wanting here the essentials of a novation. There is here neither the substitution of a new obligation nor a new debtor. There is here neither the extinguishment of the old obligation nor release of the original debtor. There is here neither consent of the creditor nor promise by the supposed substituted debtor.
2. It is insisted for the defendants in error that they should not be held to their contract, because the machines were delivered by the plaintiff to the Western Paper-Bag Company, and that the use of them for which royalty is here sought to be recovered was by that company, and not by the defendants. At the date of this contract there were three paper manufacturing companies in which the defendants were interested: The St. Louis Paper Company, at St. Louis, Mo.; the Van Nortwick Paper Manufacturing Company, at Batavia, Ill.; and the Appleton Paper & Pulp Company, at Appleton, Wis. Soon after the contract the defendants organized the Western Paper-Bag Company, and were its sole officers and managers, and, so far as appears, alone interested therein. That company would seem to have been formed for the sole purpose of operating under this contract the machines in question. The plaintiff had such knowledge only of that corporation as might be derived from its letter heads upon which the correspondence was in part conducted, and from the official signatures of the defendants, and the use of the corporate name in some of the correspondence. The correspondence was conducted principally upon letter heads of the different corporations, dependent, it would appear, upon the location of the writer. In the latter part of the period of the correspondence, the letter heads of the Western Paper-Bag Company were chiefly used. These letters were signed by one or other of the defendants, sometimes officially, sometimes individually; and, whether signed in one way or the other, they invariably speak of “our machines.” These letters were mainly written by the defendant Troendle, sometimes by the defendant Van Nortwick. So the letters of the plaintiff were addressed, during that period, sometimes to Van Nortwick individually, sometimes to him in his representative capacity, sometimes to Troendle individually, sometimes to him as vice president, and sometimes to the Western Paper-Bag Company.
It is clear from the correspondence that delivery of these machines to the Western Paper-Bag Company was with the consent and at the request of the defendants. They alone, so far as appears, and so far as the plaintiff knew, were interested in the company. The plaintiff was not advised of any transfer of the defendants’ interest in the machines. It assumed that the company and the defendants were one in fact. It was of no concern to the plaintiff that the defendants had chosen to incorporate and to conduct the business under a corporate name. Delivery could be rightfully made pursuant to the direction of the defendants. Such delivery would be in fulfillment of the contract. Delivery to the company was at the direction of the defendants. Their individual request or assent thereto could as well be expressed by their official signatures *756 as by a personal direction. If one, having a personal right to property, directs a certain disposition of it, he is, as against one complying with the instruction, personally bound by the direction given, although in so doing he acted in a representative capacity. In such case he cannot be heard to complain of an act he has caused to be done. So here the defendants by their conduct induced delivery of the machines to the corporation with which they were connected and of which they were the moving spirits. It is no answer to say that therein they acted in a representative capacity. If they had personal objection to such delivery, they should have made it manifest. They were silent when it became them to speak. They cannot now object that the delivery, which as representatives of the company they sought and obtained, was counter to their individual wishes. They are estopped. Swain v. Seamens, 9 Wall. 254, 274; Bronson v. Chappell, 32 Wall. 681. The delivery here was the precise delivery the defendants desired and requested. Under such circumstances, delivery to the company was delivery to the defendants.
The royalties sought to be recovered arose from the use of the machines by the Western Paper-Bag Company. The contract determines the liability of the defendants for royalties upon all bags made by the defendants, “or by any other person for them or for others,” by aid of the leased machines. The use of the machines by the company was by permission of the defendants. They were delivered to the company for such use by the defendants’ direction. In 1885 the company, by the defendant Rogers, as its president, and the defendant Van Nortwick as its treasurer and manager, contracted in writing with the Mutual Paper-Bag Company for the embodiment in the machines of certain patented improvements. That contract has appended the individual consent of each defendant to the disposition of the machines stated in that contract. If that written consent does not Speak their continued personal property in the machines, it does declare the rightful possession of them by the company, and their assent to the use of them by the company. The defendants were in fact the company. The manufacture by the company of the paper bags, by aid of the machines, was, if not a making of bags by the defendants themselves, a making by another for them, within the meaning of the contract, for which, by the terms of their agreement, they must respond to the plaintiff.
8. It is urged that the plaintiff failed to prove an execution and tender of license as provided by the contract. The evidence discloses that in March, 1885, soon after the delivery of the machines, the plaintiff at Boston exhibited to the defendant Troendle the licenses, counterparts of the copy license annexed to the contract, and requested their execution. He objected to the omission of some condition, not declaring its purport, but stating that it was contained in some document then at his hotel. He afterwards said he could not find "the document, but would forward it upon his return to Illinois. He failed to keep that promise. In May following, the plaintiff addressed a letter calling attention to the matter. Failing a reply, the plaintiff, in June, again wrote upon the subject. The *757 defendant Van Nortwick, after some delay, replied, regretting the omission to answer the previous letter, and stating that one of them would soon visit Boston and would see the plaintiff upon the subject. That promise was not kept. The licenses were never demanded by the defendants nor executed. If tender of the licenses were essential to recovery under the contract, we are of opinion that the conduct of the defendants operated as a waiver of performance. The proper licenses were tendered for execution. Failure of execution and delivery was due to the inattention or evasion of the defendants. They are not .permitted to take advantage of their own wrong. The licenses contained mutual obligations. The duty of the parties to execute them was concurrent. The defendants’ failure to perform excused performance by the plaintiff. U. S. v. Peck, 102 U. S. 64.
We are, however, of opinion that tender of an executed license is not a condition precedent to recovery of royalties arising from use of the patented machines. By the contract the defendants agreed to pay a specified royalty for such use. They, or another for them, have had the use and reaped the benefit. The delivery of the executed formal license in no way affected that obligation, and was not by any term of the contract a condition precedent to its fulfillment. The obligation to pay was dependent upon the use, not upon the license. The defendants were in no way injured, nor their interest jeopardized, by the omission. Aside from the grant of use, the licenses were mainly for the benefit of the lessor, regulating and restricting the use. The contract was of itself a license to use, fully protecting the defendants against any claim of infringement of the plaintiff’s right. It estopped the plaintiff to assert infringement. An agreement to license is as efficacious as a license in that respect, the conditions being performed by the licensee. A license would be presumed from the mere acquiescence of the plaintiff in such use, and from the relation and acts of the parties. Blanchard v. Sprague, 1 Cliff. 288, 297; McClurg v. Kingsland, 1 How. 202; Chabot v. Overseaming Co., 6 Fish. Pat. Cas. 71; Herman v. Herman, 29 Fed. Rep. 94. The defendants cannot be permitted to escape the obligations of their contract, or the stipulated payment for the use enjoyed, by reason of failure of formal license, which afforded them no additional protection, especially when such failure was brought about by their own negligence or artifice. The judgment is reversed, and the cause remanded, with directions to award a new trial.
Mr. Justice Harlan was not present when this decision was announced, but he participated in the hearing and decision of the case, and concurs in this opinion.