MOUND VALLEY VITRIFIED BRICK CO. v. MOUND VALLEY NATURAL
GAS & OIL CO. et al.

(Circuit Court, D. Kansas, Third Division. May 1, 1911.)

1. ASSIGNMENTS ⬤⟹109—EXECUTORY CONTRACT—LIABILITY OF ASSIGNEE.
   An assignee of an executory contract relating to property in which
   there can be no privity of estate cannot be held liable for a breach,
   unless there has been a novation which releases his assignor from liability.

2. ASSIGNMENTS ⬤⟹109—EXECUTORY CONTRACT—LIABILITY OF ASSIGNEE.
   Where one of two defendants contracted to furnish to plaintiff natural
   gas, required to operate its brick-making plant and kilns for a term of ·
   years at a stated rate, and assigned the contract to its codefendant which
   performed it for a number of years and received the payments thereunder,
   and then refused further performance, plaintiff held not to have a joint
   cause of action against defendants for the breach, for which, there being
   no novation, the defendant with whom plaintiff contracted is alone liable. .

3. COVENANTS ⬤⟹30—EXECUTORY CONTRACTS—LIABILITY OF ASSIGNEE—PER
   SONAL COVENANTS.
   The covenants in a contract to furnish natural gas to a purchaser dur
   . ing a term of years are purely personal, and a provision that it shall be
   binding upon the heirs and assigns of the parties is inoperative to bind an
   assignee of the seller; nor does such an assignment, without consent of
   the purchaser, release the seller from its obligations.

At Law. Action by the Mound Valley Vitrified Brick Company
against the Mound Valley Natural Gas & Oil Company and the Bankers' National Development Company. On separate motions of defendants in arrest of judgment and for new trial. Sustained as to the
Gas Company, and denied as to the Develpoment Company.

Farrelly & Evans, of Chanute, Kan., and John Madden, of Wichita,
Kan., for plaintiff.

Jepson & Jepson, of Sioux City; Iowa, and Glasse & Burton, of
Parsons, Kan., for defendants.

POLLOCK, District Judge. This action at law was brought by
plaintiff against defendants jointly to recover damages for breach of
contract to supply plaintiff with natural gas used by it in its work of
manufacturing brick. A trial before the court and jury was had,
resulting in a verdict in favor of plaintiff against defendants, jointly,
for the sum of $15,000. On the return of the verdict, the court, on
its own motion, directed the clerk to not enter judgment thereon until
certain matters of law might be presented and determined by the court.
Separate motions of defendants, raising questions of law on the record, have been filed and presented in oral argument and on briefs of
counsel, and now await decision.

The facts necessary to a decision of the pending motions may be
briefly stated, as follows: The plaintiff, being about to construct a
plant for the purpose of engaging in the manufacture of brick, and being desirous of obtaining in advance a supply of fuel used in such business, on February 13, 1904, entered into the following contract in

⬤⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

writing with defendant the Bankers' National Development Company (hereinafter called the "Development Company"):

"This contract and agreement made and entered into this 13th day of February, 1904, by and between the Bankers' National Development Company, a corporation, organized and existing under the laws of the state of South Dakota, and doing business under the laws of the state of Kansas, and having an office for the transaction of business in the city of Mound Valley, Labette county, Kan., its successors and assigns, party of the first part, and the Mound Valley Vitrified Brick Company, a corporation organized under the laws of the state of Kansas, and doing business in Labette County, Kan., and having an office in the city of Mound Valley, Kan., its successors and assigns, party of the second part, witnesseth:

"(1) That the party of the first part hereby agrees to undertake to furnish to party of the second part natural gas from the wells in the field owned, leased, and operated by them in Labette county, Kan., in sufficient quantities to operate the brick plant now owned by the second party near Mound Valley, Kan., located on the north fractional part of the west half of the southeast one-fourth of section 35, township 32, of range 18, formerly known as the I. M. Hinds land, to lay and maintain a pipe line to said brick plant, including one three-inch high pressure gas regulator, and two two-inch low pressure regulators, and furnish sufficient gas to furnish the power to operate all machinery used by said second party in operating its said brick plant; also to supply gas for all drier houses, and also gas to burn two kilns of brick at the same time at full heat; that is to say, said party of the first part, its successors and assigns, undertake to furnish to said second party natural gas in sufficient quantities to enable the said second party to run and operate its brick plant at full capacity and at the same time to furnish gas for all drier houses and for the burning of two kilns of brick at full heat at all times day and night, and at all seasons of the year, and for lighting and heating said brick plant, when required by said second party, during the existence of this contract.

"(2) The party of the second part agrees to receive and use gas for the purposes above named, and to use all reasonable means and modern appliances, so as not to waste any gas, and to pay to said first party, its successors and assigns, for said gas used, at the rate of 60 cents per 1,000 brick burned, and to pay for the same on the 15th day of each month after the kilns are emptied; and the party of the first part may shut off the gas if the party of the second part shall fail to pay for the same as herein provided within five days after the same is due and payable.

"(3) It is expressly agreed and understood by and between the parties hereto that gas for domestic purposes shall be reserved over and above the uses of gas for manufacturing purposes; and should the gas supply of the party of the first part be not sufficient to furnish gas for heating and lighting and for the operating of the brick plant belonging to the party of the second part as above provided, then and at that time the party of the first part will drill in other and sufficient wells on the lands leased then held and operated by them, and to use all diligent effort to supply the deficiency, and in conjunction with the board of directors of the party of the second part, to make all reasonable effort in their power to make the supply sufficient for the needs of the party of the second part. The party of the first part shall not be liable for a failure to furnish gas to second party as herein provided, after due diligence shall have been used by first party in the way of securing the necessary quantity of gas.

"(4) It is further agreed to by party of the first part that if they should, at any time after the date of this contract, agree to furnish gas to any other party or parties for manufacturing purposes, and the gas supply should fail so that there would not be a sufficient quantity of gas to supply all so contracted with, and it should cause the supply furnished the party of the second part to be insufficient for the needs of the second party, then the party of the first part are to cease to furnish (for manufacturing purposes only) to party or parties contracted with subsequent to the date of this contract, until sufficient gas

has been secured to reinforce the supply until there shall be sufficient gas for all; in other words, the party of the second part are to be furnished gas by the party of the first part in preference to others contracted with after the date of this contract, except as to domestic users.

"(5) It is expressly agreed and understood by and between the parties to this agreement, in case that the party of the first part shall, at any time during the existence of this contract, fail to furnish the said party of the second part sufficient gas for the purposes above named, and in the manner above named, and in the quantities required in this contract for a period of fifteen days, the said second party shall have the right to terminate this contract at any time after such failure, upon written notice deposited in the post office, addressed to the secretary of the party of the first part.

"(6) It is further expressly understood by and agreed to by the parties to this contract, that its terms, conditions, premises and duties to be performed by each and both of the parties hereto, shall be for the term of fifteen years from the date of the execution hereof.

"In witness whereof, the parties hereto have each caused this contract and agreement to be executed by its president, attested by its secretary and the corporate seal attached, this 13th day of Feb., 1904. Bankers' National Development Co., by A. D. Jones, President. Attest: Geo. F. Hammar, Secty. Mound Valley Vitrified Brick Co., by E. R. Dickerson, Pres. Attest: James Lear, Jr., Secty."

The respective obligations of this contract were fully performed by the parties thereto until May 4, 1904, on which day the Development Company assigned its rights under the contract to defendant the Mound Valley Natural Gas & Oil Company, (hereinafter called the "Gas Company") by the following assignment in writing:

"In consideration of one dollar and other valuable considerations in hand paid by the Mound Valley Natural Gas & Oil Company, the receipt of which is hereby acknowledged, we hereby sell, assign and transfer all our right and title to the within contract unto the said Mound Valley Natural Gas & Oil Company. . Bankers' National Development Company, A. D. Jones, President. [Seal.] Attest: Geo. F. Hammar, Secretary.

"State of Kansas, Labette County—ss.:

"Be it remembered that on this 2d day of May, A. D. 1904, before me, the undersigned, a notary public in and for said county and state aforesaid, came A. D. Jones, president of the Bankers' National Development Company, and Geo. F. Hammar, secretary of the Bankers' National Development Company, who are personally known to me to be the same persons who executed the above instrument of writing, and who duly acknowledged the execution of the same.

"In testimony whereof, I have hereunto set my hand and affixed my official seal the day and year last above written.

"[Seal.]            H. T. Swain, Notary Public.

"My commission expires July 30, 1917."

Thereafter the Gas Company proceeded with performance of the conditions of the contract obligatory on the part of the Development Company to be performed, and received from plaintiff the consideration expressed in the contract for the performance of such service until the month of December, 1908, when it refused longer to perform said contract. Whereupon this action was brought by plaintiff against both the Development Company and the Gas Company, jointly, to recover damages sustained by reason of such breach.

The question of law on which the court requested advice of counsel on return of the verdict by the jury is this: May the plaintiff in this action, as a matter of law, proceed against both defendants jointly un-

der the terms of the contract and its assignment, and hold both liable for damages sustained by it by reason of the breach? If not, which of defendants is liable to plaintiff for the amount of damages as found by the jury in its verdict? It is the contention of defendant Gas Company, in support of its motion, notwithstanding the assignment of the contract to it by the Development Company, its acceptance of such assignment, its performance of the conditions of the contract, as by its terms imposed on the Development Company for more than four years, and its receipt from the plaintiff for such time of the price stipulated in the contract to be paid for natural gas furnished, that in the absence of an express undertaking with the plaintiff, and in the absence of such facts as constitute a novation of the contract, releasing the Development Company from liability thereunder, it cannot be by plaintiff in this action at law held liable for breach of the continuing executory contract relied upon by plaintiff. On the contrary, it is the insistence of plaintiff, although there is no expressed undertaking on the part of the defendant Gas Company with plaintiff to perform, the conditions of the contract found in the record, and although it is not ended by plaintiff the facts found in the record constitute a novation of the contract between plaintiff and the Gas Company, yet it is by plaintiff insisted both defendants are primarily liable to it in damages for the breach of the contract, leaving the question of the ultimate liability as between defendants to be determined in the absence of plaintiff after it has been satisfied in damages. And this contention of plaintiff is based on the following propositions: (1) That the Development Company is liable to it by reason of the express terms of the contract; (2) that the Gas Company is liable to it on the theory of privity of estate existing between the plaintiff and the Gas Company, by reason of the assignment of the contract from the Development Company to the Gas Company.

[1] As plaintiff concedes in its briefs and arguments, here was no novation of the original contract as between it and the Gas Company, by which the Development Company was released from liability thereunder, as must be done in case it sought to hold the Gas Company on that theory. Butterfield v. Hartshorn, 7 N. H. 345, 26 Am. Dec. 741; Bag Co. v. Van Nortwick, 52 Fed. 752, 3 C. C. A. 274; Illinois Car & Equipment Co. v. Linstroth Wagon Co., 112 Fed. 737, 50 C. C. A. 504. And as it further concedes there exists no express agreement between plaintiff and the Gas Company by which it may be maintained liable, but, on the contrary, it has brought this action jointly against both defendants, and now seeks to maintain both liable for the payment of damages as awarded by the verdict of the jury in direct opposition to the theory of novation of the contract as between it and the Gas Company, it is evident, if the verdict is in other respects right, judgment must go thereon in favor of plaintiff and against the Development Company.

[2] The question of merit presented is: Can plaintiff have judgment against both the Development Company and the Gas Company on the theory of privity of estate as contended by it? The decision of this question must depend on the inherent nature of the contract

itself. By reference thereto it will be seen it has no relation in any manner to real property, but is a continuing contract, by which the Development Company obligates itself to furnish natural gas to plaintiff at a stipulated price on certain conditions for a period of years; that is to say, by its terms the Development Company sold personal property in indefinite amounts and on certain conditions to be delivered to plaintiff as the exigencies of its business might demand through a series of years, at a stipulated rate. Did the defendant Gas Company, merely by accepting an assignment of this contract, by delivering natural gas to plaintiff as therein stipulated, and by receiving the consideration to be paid therefor for a period of years, bind itself to the continued performance of the contract according to its terms during the life of such contract?

It may be first noted the contract in express terms contains a stipulation which attempts to bind, not only the Development Company, but "its successors or assigns," to the obligations therein imposed, and from this it is thought by plaintiff, as the Gas Company admittedly occupies the relation of assignee to the contract, it thereby became bound by its terms. Does this conclusion follow?

While it is undoubtedly true as contended by counsel for plaintiff, one who accepts an assignment of a lease of real property with the consent of the landlord, or enters into possession thereunder, becomes liable to the landlord for payment of the rent reserved in the lease, and while he continues as such assignee of the lease for breach of its covenant to pay rent the landlord may charge the original lessee on the ground of privity of contract and the sublessee or assignee of the lease on the doctrine of privity of estate. Washington Natural Gas Co. v. Johnson, 123 Pa. 576, 16 Atl. 799, 10 Am. St. Rep. 553; Schmucker v. Sibert, 18 Kan. 104, 26 Am. Rep. 765; Woodland Oil Co. v. Crawford, 55 Ohio St. 171, 44 N. E. 1093, 34 L. R. A. 62; Hogg v. Reynolds, 61 Neb. 758, 86 N. W. 479, 87 Am. St. Rep. 522.

[3] Yet all covenants of parties to a contract are either real or personal, depending on the subject-matter of the contract. All contracts of conveyance of real property and all other contracts so closely connected with real property that the benefits or burdens of such contract pass by a conveyance of the property itself are what is termed in the law covenants real. All other covenants or agreements of parties in the nature of covenants in their contracts are personal. Thus the covenant in a lease to pay rent reserved is a covenant which runs with the possession of the land, and for this reason when the lease is assigned the covenants being for the benefit of the land, and being for the payment of that which arises out of the use and enjoyment of the land, follows the property in the hands of the assignee and binds him to the payment of all rents accruing while he enjoys its possession. In other words, by the very act of assignment of such a contract and its acceptance by the assignee, the privity in estate created between the landlord and the original lessee by the lease passes out of the original lessee into the assignee for the reason that thereby a right in or to the land itself passes. However, as has been seen, the contract here in controversy has no relation whatever to real estate or any right

thereto, or title or interest therein, and the covenants or agreements of the parties contained in this contract are therefore purely personal. An action on a personal covenant or agreement will not lie in favor of a person not a party to it, and as a general rule, only the covenantor, his executors and administrators are bound by such personal covenants. Heirs at law are bound when expressly named in the contract. Assignees are not bound at law, although they may be named, but in certain instances they may be charged in equity. Van Doren v. Robinson, 16 N. J. Eq. 256; 11 Cyc. L. & P. subject, "Covenants," p. 1058.

In the case of Lisenby v. Newton, 120 Cal. 571, 52 Pac. 813, 65 Am. St. Rep. 203, the facts, as stated by the court in the opinion, were as follows:

"Prettyman Barr, the plaintiff's intestate, entered into a written contract with defendant Newton whereby Barr agreed to sell and Newton agreed to buy a certain tract of land; Newton promising to pay the stipulated price and interest thereon within two years from the date of the contract, and Barr covenanting to convey the land to Newton or his assigns on receiving such payment. The contract contained a provision that the stipulations thereof 'are to apply to and bind the heirs, executors, administrators, and assigns of the respective parties.' Afterwards, in consideration of a sum of money to him paid by defendant Sharples, said Newton assigned all his right, title, and interest in and to the contract, and the premises which were the subject thereof, to said Sharples. In virtue of such assignment Sharples took possession of the land and made certain payments to Barr of principal and interest on account of the contract price. Plaintiff brought this suit on said contract against both Newton and Sharples."

The precise question presented and determined in that case was the liability of defendant Sharples for the balance of purchase money remaining unpaid. This liability was contended for by the plaintiff on two grounds: (1) On the theory that the agreement contained in the contract to pay the purchase price was a covenant running with the land; (2) because of the stipulations in the contract extending it to the heirs, personal representatives, and assigns of the respective parties. In passing on the personal liability of defendant Sharples the court in its opinion said:

"Plaintiff contends on appeal that Sharples was personally responsible for the purchase money and interest. Of course, no assignee of the purchaser in an executory contract for the sale of real estate can require the vendor to convey unless the purchase money be paid; but this conditional right to a conveyance is quite a different thing from personal liability to compulsory payment at the suit of the vendor. Such liability can result only from some express or implied contract of the assignee, and is not implied from the mere assignment of the original contract, although followed by possession of the land. There are authorities which deny that a covenant can run with an equity, or without a legal estate in the land. We need not inquire what limitations attend the principle, for it is clear that the promise to pay the agreed price in a contract for the purchase of real estate is not of itself a covenant running with the land, or accompanying the equitable interest of the purchaser into the hands of his assignee. Champion v. Brown, 6 Johns. Ch. 398 [10 Am. Dec. 343]; Civ. Code, § 1461, et seq. See Irrigation Co. v. Rowell, 80 Cal. 114, 22 Pac. 53 [13 Am. St. Rep. 112]. Hence, if Sharples is liable at all in this action, it must be in consequence of the clause of the contract which in terms extends the obligations of the instrument to the assigns of the parties; but, since the promise to pay was only the personal covenant of the promisor, the attempt to include in its force the assigns of the vendee is inoperative. It was

not competent for the parties in this manner to create a contract for such assigns. Such is the ancient rule of the common law. Thus, it is said in the Touchstone: 'In some cases an assignee shall be charged though he be not named, and in some cases shall not be charged though he be named, and in some cases he shall be charged when he is named. * * * And, if the covenant be to do a thing merely collateral; in that case it will not bind the assignees, albeit they be named expressly. Also, when a contract is personal only, and a man doth bind himself and his assigns, his assigns shall not be bound thereby.' Pages 178, 179. And in Sir Edward Coke's report of Spencer's Case, 5 Coke, 16a, we are informed that: 'It was resolved, * * * if a man demises a house and land for years, with a stock or sum of money, rendering rent, and the lessee covenants for him, his executors, administrators, and assigns, to deliver the stock or sum of money at the end of the term, yet the assignee shall not be charged with this covenant; for, although the rent reserved was increased in respect to the stock or sum, yet the rent did not issue out of the stock or sum, but out of the land only, and therefore, as to the stock or sum, the covenant is personal, and shall bind the covenantor, his executors and administrators, and not his assignee.' Equally, in the case before us, the covenant is to pay a sum in gross, not issuing out of the land, and not for its benefit or protection; in other words, it is a personal, and not a real, covenant. Still the appellant seeks to liken the case to the covenant to pay rent in contracts between landlords and tenants. In the particular under view there is no resemblance—at least so far as the rules of positive law are concerned—between the contract of lease and that of sale. It is sufficient for present purposes to point out that our statute allows the covenant to pay rent to run with the land. Civ. Code, §§ 1462, 1463. The assigns of the lessee are now, as they have been from remote times, bound by the covenant, whether they are named in the lease or not. But we have seen that the purchaser's promise to pay the price agreed in a contract of sale does not run with the land, and the agreement of the parties could not confer that transitive quality upon it. Smith, Lead. Cas. (6th Am. Ed.) 158, 162, 211. By the assignment from Newton to Sharples it may be that as between them Sharples became impliedly bound to protect his assignor against the demands of the vendor on the contract (Cutting Packing Co. v. Packers' Exch. of California, 86 Cal. 574, 25 Pac. 52 [10 L. R. A. 369, 21 Am. St. Rep. 63]); but that it is no concern of the plaintiff. Such an obligation (if it arose) did not spring from a contract expressly made for the vendor's benefit, and he cannot take advantage of it."

In like manner the executory agreement of the Development Company in the case at bar to furnish the plaintiff natural gas to be used by it in the conduct of its business throughout a term of years was the personal engagement of that company, from which obligation to plaintiff it could not and did not escape by the assignment of the contract to the Gas Company. For the continued performance of its obligation to plaintiff, notwithstanding the assignment of the contract made, the Development Company remained liable as before. As has been seen, the parties were powerless to extend the personal obligations of the contract to their assigns, and, as it is not contended by plaintiff a novation of the contract between it and the Gas Company arose out of the assignment made, or the acts and conduct of the parties thereto succeeding such assignment, and as the Gas Company did not agree with plaintiff to continue during the life of the contract, or any portion thereof, to perform the continuing obligations of the Development Company, it must follow, of necessity, by virtue of the assignment made, it came under no legal obligation to plaintiff to continue such performance, and correspondingly the plaintiff, by virtue of the assignment of its contract with the Development Company to the Gas Company, was placed under no obligation to that company to continue the

receipt of gas from it and to pay it the price stipulated in the contract; but, in so far as the rights of that company were concerned, it might have terminated the contract at will.

The grounds on which the foregoing conclusion is based are apparent from the very nature of the contract involved. The contract, by its terms, not only confers a right on the plaintiff to receive the natural gas contracted for therein during a period of years, and the corresponding right of the Development Company to receive payment therefor when furnished, but it also imposes on the Development Company the continuing obligation to furnish the gas during the life of the contract, and the reciprocal obligation on the part of the plaintiff to continue to receive and pay for it when furnished. While contract rights may be assigned by one party to a contract without the consent of another, contract obligations may not be so assigned. In other words, where a personal contract involves, not only mutual rights of the parties thereto, but also mutual obligations, as in this case, both parties must consent to an assignment to make it effective. Such is the settled rule of decision.

In Arkansas Smelting Co. v. Belden Co., 127 U. S. 379, 8 Sup. Ct. 1308, 32 L. Ed. 246, Mr. Justice Gray, delivering the opinion of the court, said:

"At the present day, no doubt, an agreement to pay money, or to deliver goods, may be assigned by the person to whom the money is to be paid or the goods are to be delivered, if there is nothing in the terms of the contract, whether by requiring something to be afterwards done by him, or by some other stipulation, which manifests the intention of the parties that it shall not be assignable.

"But every one has a right to select and determine with whom he will contract, and cannot have another person thrust upon him without his consent. In the familiar phrase of Lord Denman, 'You have the right to the benefit you anticipate from the character, credit and substance of the party with whom you contract.' Humble v. Hunter, 12 Q. B. 310, 317; Winchester v. Howard, 97 Mass. 303, 305 [93 Am. Dec. 93]; Boston Ice Co. v. Potter, 123 Mass. 28 [25 Am. Rep. 9]; King v. Batterson, 13 R. I. 117, 120 [43 Am. Rep. 13]; Lansden v. McCarthy, 45 Mo. 106. The rule upon this subject, as applicable to the case at bar, is well expressed in a recent English treatise: 'Rights arising out of contract cannot be transferred if they are coupled with liabilities, or if they involve a relation of personal confidence such that the party whose agreement conferred those rights must have intended them to be exercised only by him in whom he actually confided.' Pollock on Contracts (4th Ed.) 425.

"The contract here sued on was one by which the defendant agreed to deliver 10,000 tons of lead ore from its mines to Billing and Eilers at their smelting works. The ore was to be delivered at the rate of 50 tons a day, and it was expressly agreed that it should become the property of Billing and Eilers as soon as delivered. The price was not fixed by the contract, or payable upon the delivery of the ore. But, as often as 100 tons of ore had been delivered, the ore was to be assayed by the parties or one of them, and, if they could not agree, by an umpire; and it was only after all this had been done, and according to the result of the assay, and the proportions of lead, silver, silica and iron thereby proved to be in the ore, that the price was to be ascertained and paid. During the time that must elapse between the delivery of the ore and the ascertainment and payment of the price, the defendant had no security for its payment, except in the character and solvency of Billing and Eilers. The defendant, therefore, could not be compelled to accept the liability of any other person or corporation as a substitute for the liability of those with whom it had contracted."

In Delaware County v. Diebold Safe Co., 133 U. S. 473, 10 Sup. Ct. 399, 33 L. Ed. 674, the same justice, delivering the opinion, said:

"A contract to pay money may doubtless be assigned by the person to whom the money is payable, if there is nothing in the terms of the contract which manifests the intention of the parties to it that it shall not be assignable. But when rights arising out of contract are coupled with obligations to be performed by the contractor, and involve such a relation of personal confidence that it must have been intended that the rights should be exercised and the obligations performed by him alone, the contract, including both his rights and his obligations cannot be assigned without the consent of the other party to the original contract."

In Burck v. Taylor, 152 U. S. 634, 14 Sup. Ct. 696, 38 L. Ed. 578, which was a suit in equity to enforce the rights of an assignee of a contract, Mr. Justice Brewer, delivering the opinion of the court, said:

"We have thus far rested the nonassignability of this contract, or any interest therein, to plaintiff's grantor upon the express stipulation of clause 26; but, even in the absence of such a clause, it was not competent for Schnell, by his own act and without the consent of the state, the other contracting party, to transfer any interest in this contract. It is a contract of that nature which is not susceptible of assignment without the consent of the other party. Arkansas Valley Smelting Co. v. Belden Mining Co., 127 U. S. 379 [8 Sup. Ct. 1308, 32 L. Ed. 246]; Delaware County v. Diebold Safe & Lock Co., 133 U. S. 473, 488 [10 Sup. Ct. 399, 404 (33 L. Ed. 674)]. In the latter case it was said by this court: 'A contract to pay money may doubtless be assigned by the person to whom the money is payable, if there is nothing in the terms of the contract which manifests the intention of the parties to it that it shall not be assignable. But when rights arising out of contract are coupled with obligations to be performed by the contractor, and involve such a relation of personal confidence that it must have been intended that the rights should be exercised and the obligation performed by him alone, the contract, including both his rights and his obligations, cannot be assigned without the consent of the other party to the original contract.'"

Whether by virtue of the assignment any obligation was cast on the Gas Company to protect the Development Company from loss by reason of a breach of the contract it is unnecessary to here consider. That is no concern of the plaintiff, and it did not in terms agree to so do. This is not a controversy between the assignor and assignee of a contract as to validity of the assignment.

Again, whether under all the facts and circumstances of this case the defendant Gas Company would be held precluded from denying any obligation to plaintiff in equity by virtue of the assignment of the contract, and its acts done thereunder and in pursuance thereof, on authority of Wiggins Ferry Co. v. O. & M. Railway, 142 U. S. 396, 12 Sup. Ct. 188, 35 L. Ed. 1055, Rock Island Railway v. Rio Grande Railroad, 143 U. S. 596, 12 Sup. Ct. 479, 36 L. Ed. 277, and many other cases cited and relied upon by plaintiff, need not be here considered, for this is an action at law, and plaintiff must recover, if at all, on its legal, not its equitable, rights.

It follows the motion to arrest the judgment and for a new trial on the part of the Development Company, defendant, must be overruled and denied. The like motions on behalf of the Gas Company must be sustained. It is so ordered.