ILLINOIS CUDAHY PACKING CO. v. KANSAS CITY SOAP CO.

(District Court, D. Kansas, First Division. January 11, 1918.)

No. 1844.

1. EVIDENCE ⬤⟞9—JUDICIAL NOTICE.
    That crude glycerine is a product derived from animal fats is a scientific fact, of which the courts take judicial notice.

2. CORPORATIONS ⬤⟞372—POWERS—CONSTRUCTION.
    A corporation authorized to buy and slaughter cattle, hogs, and sheep, and deal in provisions and all classes of packing house products, has authority to purchase crude glycerine; it being derived from animal facts and being a common product of the meat-packing industry.

3. ASSIGNMENTS ⬤⟞117—CONTRACTS—EFFECT.
    Though plaintiff assigned an executory contract with defendant for the purchase of goods, the original parties were not released from the contract, unless a new obligation was entered into between plaintiff and defendant on the theory of novation, and, none having been entered into, plaintiff might maintain an action for breach.

**4. CORPORATIONS ⊂⊃578—REORGANIZATION—EFFECT.**

> Where plaintiff corporation, which contracted with defendant for the purchase of glycerine, tendered defendant the full purchase price, demanding the glycerine, plaintiff's action for damages, it having purchased glycerine in the open market at a price above the contract price, was not lost by reason of a transfer of its assets to the newly formed corporation; for, though plaintiff stockholders formed a new corporation and transferred its assets to such company, plaintiff remained in existence for the purpose of winding up its corporate affairs.

At Law. Action by the Illinois Cudahy Packing Company, a corporation, against the Kansas City Soap Company, a corporation. On motions of respective parties for directed verdicts. Verdict directed for plaintiff.

J. E. McFadden and O. Q. Claflin, Jr., both of Kansas City, Kan., and Defrees, Buckingham & Eaton, of Chicago, Ill., for plaintiff.

J. H. Brady and E. H. Henning, both of Kansas City, Kan., for defendant.

POLLOCK, District Judge. The facts in this case are not in dispute. They are briefly summarized as follows:

On September 30, 1915, the parties entered into a contract in writing by the terms of which defendant sold to plaintiff and agreed to deliver f. o. b. Kansas City, Kan., to plaintiff, not less than 90 and not to exceed 100 drums of crude glycerine at the price of 22 cents per pound, delivery to be made between October, 1915, and December 31, 1916, in carload lots of 30 or 31 drums per car. Under the terms of the contract defendant did deliver to plaintiff, and plaintiff received, 54 drums of the glycerine contracted for, for which plaintiff paid defendant the contract price. However, as the market price of crude glycerine, on account of changed conditions, greatly increased after the making of the contract, defendant wholly failed and refused to deliver the remaining 36 drums stipulated in the contract. Thereupon the plaintiff tendered the full contract price and demanded performance of the contract by defendant. On defendant's refusal to perform its contract with plaintiff, or to receive the contract price, plaintiff went on the open market and purchased said 36 drums of glycerine at the then market price of $7,172.94 in excess of the contract price agreed to be paid by plaintiff, and brings this action to recover its damages so sustained by defendant's breach of the contract.

Defense of the action is made on three grounds: (1) Because the contract is ultra vires and void on the part of the plaintiff; therefore defendant is not bound by its terms. (2) Because, after the making of the contract, plaintiff company sold, assigned, and transferred its corporate assets, including its rights under the contract in suit, to the Cudahy Packing Company of the state of Maine; therefore, it is contended by defendant, plaintiff is not the real party in interest, and has no right to bring or maintain this action against it. (3) That plaintiff sold and assigned all of its corporate assets to the Maine company after its formation, and thus disqualified itself to carry out

---

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

and perform the contract on its part; wherefore defendant is not bound by its terms.

A trial of the case was entered upon before the court and a jury. After the completion of the evidence, by stipulation of the parties made in open court, the jury was withdrawn and the case submitted to the court on motions of both parties for instructed verdicts in their behalf. The case comes now on for decision on said motions and the briefs and arguments of counsel herein.

[1, 2] As to the claimed ultra vires character of the contract it may be said: Under its charter received from the state of Illinois the plaintiff possessed the following powers:

"The object for which said corporation is formed is to purchase for slaughter and slaughter cattle, hogs, and sheep, and manufacture and dispose of the products thereof; also to buy, sell, and deal in meats, provisions, and all classes of produce and packing house products."

That crude gylcerine is a product derived from animal fats is not only a scientific fact, of which courts take judicial notice, but the evidence found in the record abundantly establishes crude glycerine to be a common product of the meat-packing industries of this country.

[3] As to the contention made by defendant, whereas, the plaintiff assigned the contract in action to the Maine corporation, therefore plaintiff is not the real party in interest and is not entitled to bring and maintain this action, it may be said:

It will be noted this is not a case in which the assignee of an executory contract brings an action thereon to recover for its breach, but is a case in which the action is between the original parties to the contract. Hence all questions relating to the assignment of executory contracts without the consent of one of the parties thereto, or the novation of contracts, are not involved in this case. If plaintiff assigned the executory contract involved to the Maine corporation without the knowledge, consent, and acquiescence of defendant, it is clear defendant could not have been held to the performance of the contract by the Maine corporation, for in such case, if an action by the Maine corporation to recover damages for its breach from defendant, a sufficient answer to defendant would have been: "We do not know you; we never contracted with you, and are not liable to you." On the other hand, had defendant, learning of such assignment being made, attempted to proceed against the Maine company for either breach of the contract or to recover the purchase price stipulated therein, on delivery or tender of delivery of the glycerine to said corporation under the terms of the contract, the Maine company would have defended on the ground it did not accept defendant as a party contracting with it, nor did it by the terms of the assignment made assume the obligation incurred by the plaintiff in the making of the contract, hence is not bound by its terms.

In any event, it is quite clear, under the settled rule of decision, the assignment of the executory contract in dispute by plaintiff to the Maine corporation did not operate to release or discharge the original parties thereto, from its binding obligation, unless a new obligation was entered into between plaintiff and defendant, on the theory

of novation, which is not claimed in this case. As illustrative of the foregoing principles stated, see American Paper Bag Co. v. Van Nortwick, 52 Fed. 753, 3 C. C. A. 274; Illinois Car & Equipment Co. v. Linstroth Wagon Co., 112 Fed. 737, 50 C. C. A. 504; Lisenby v. Newton, 120 Cal. 576, 52 Pac. 813, 65 Am. St. Rep. 203.

It follows, notwithstanding the assignment made or claimed to have been made to the Maine corporation by plaintiff, and regardless of the rights of plaintiff and said Maine corporation created by virtue of such assignment inter sese, as this action is instituted by the only party entitled to bring or maintain it, of necessity the plaintiff is the real party in interest.

[4] The remaining contention of defendant is: As plaintiff by the reorganization of its business, on the formation of the Maine corporation and the transfer of its assets to said corporation, as shown by the record, disqualified itself from compliance with its obligation under the terms of the contract, therefore thereafter the contract was not mutual, and defendant is released and discharged from its further performance. In this regard it may be said there would appear many answers to this contention. It is sufficient to say plaintiff company was neither dissolved nor its property rights abandoned by the act of its shareholders in organizing the Maine corporation and the transfer of its corporate assets to said company as was done in this case. On the contrary, its corporate existence still remained for the purpose of winding up its corporate business affairs, and plaintiff still lives and exists. After the admitted breach of the contract involved in this suit by defendant, plaintiff demanded its performance, and tendered and offered to pay defendant the full contract price of the glycerine, which demand for performance and tender defendant refused; from all of which it is made clear the defenses to this action are as technical and without merit as would have been a defense based on like grounds, had the price of glycerine fallen far below the contract price, instead of having risen, and the plaintiff, refusing to comply with its contract and receive the product purchased by it, on breach of the contract, had been proceeded against by defendant for damages.

It follows the motion of plaintiff for an instructed verdict must be sustained, and the clerk is directed to prepare sign and file such verdict for plaintiff, and enter judgment thereon, as by plaintiff prayed in its petition. The motion of defendant for directed verdict is overruled and denied.

It is so ordered.