[Civ. No. 11757.   First Dist., Div. Two.   Jan. 29, 1942.]

CARL A. RIETZ, Respondent, v. HOVDEN FOOD PRODUCTS CORPORATION (a Corporation), Appellant.

John Milton Thompson and Orrick, Dahlquist, Neff & Herrington for Appellant.

Mueller & Westover, Jesse A. Mueller, Pillsbury, Madison & Sutro, Marshall P. Madison, Francis R. Kirkham and Gerald S. Levin for Respondent.

SPENCE, J.—Plaintiff recovered judgment against defendant for the alleged purchase price of two presses. Defendant appeals from said judgment.

Defendant presents numerous contentions on this appeal but the determinative question under the unusual situation presented by the record is whether there was any valid written contract between the plaintiff and defendant for the purchase of said presses.

Plaintiff was engaged in the manufacture and sale of machinery under the fictitious name of Process Machinery Company. Defendant was a corporation engaged in fish canning at Monterey. The president of the defendant corporation, hereinafter called the Hovden Company, was K. Hovden,

who was also the president of Mazama Fisheries Corporation, hereinafter called the Mazama Company. The last mentioned corporation was organized for the purpose of acquiring the "Mazama" and operating said vessel in the fish reduction industry at Neah Bay, Washington.

In April, 1936, plaintiff entered into a written contract with the Mazama Company, by which it agreed to sell and deliver to said corporation four "presses" and one "disintegrator." The entire purchase price was $13,650, which was payable $3,412.50 upon the execution of the agreement, and the balance in equal monthly installments commencing on July 15, 1936, and ending on October 15, 1936. Delivery was to be made on or before May 22, 1936.

The above mentioned machinery was ordered for installation on the "Mazama" and said machinery was to be shipped to the Commercial Boiler Works in Seattle for that purpose. In May, 1936, it developed that plaintiff would be unable to make delivery of said equipment by May 22nd as provided in the written agreement. The northern fishing season was to open shortly and the Mazama Company arranged with the Hovden Company to obtain from the Hovden Company two presses which the Hovden Company had acquired a short time before. In return, the Mazama Company agreed with the Hovden Company to cause two of the four presses covered by its written contract with plaintiff to be delivered by plaintiff to the Hovden Company as soon as said presses were completed. This arrangement appears to have been agreeable to all concerned.

Pursuant to this arrangement the Hovden Company shipped its two presses from its plant at Monterey to Seattle for installation on the "Mazama" and the Mazama Company instructed plaintiff to deliver to the Hovden Company at plaintiff's plant in Oakland two of the four new presses covered by the written contract between plaintiff and the Mazama Company. Two new presses were thereafter shipped by plaintiff to Seattle and the two remaining new presses were delivered by plaintiff on June 15, 1936, to the Hovden Company at plaintiff's plant in Oakland. These last mentioned new presses were installed in the Hovden Company's Monterey plant in place of the two presses which it had removed and sent to Seattle for installation on the "Mazama."

The Mazama Company made the initial payment upon the

written contract and also paid in advance the payment due on July 15, 1936, making a total payment of $5,971.87 upon said written contract. Thereafter the Mazama Company appears to have had financial difficulties. It did not make the payment due on August 15, 1936, or any further payment. Later in 1936, it was adjudicated a bankrupt. Plaintiff assigned, "for the purposes of collection only" its claim against the Mazama Company and plaintiff's assignee sought his remedy on the written agreement in the bankruptcy court. He was unsuccessful, and in 1937, plaintiff charged off as a bad debt in his income tax return the entire balance due on this written contract with the Mazama Company. It was not until February, 1940, that plaintiff filed his complaint in this action seeking to recover the alleged purchase price of two presses from the Hovden Company.

This action was brought upon the theory that a valid written contract for the purchase of said two presses was entered into between plaintiff and the Hovden Company in June, 1936. The claim that such contract existed was based solely upon two letters, one written by an employee of plaintiff on June 1, 1936, and one written in reply thereto by an employee of the Hovden Company on June 3, 1936. After the above mentioned arrangement for the exchange of two presses had been made between the Mazama Company and the Hovden Company, plaintiff instructed his employee Harris that he "should ship two of these to the Commercial Boiler Works and that the Hovden Food Products would call with a truck for the other two, and they would go to Monterey."

The first of the two letters above mentioned was written by Harris, plaintiff's employee, on June 1, 1936, and read in part as follows: "On June 12th we will bill four presses to the Commercial Boiler Works, Seattle, shipping two of them to Seattle and holding two for your truck to take to Monterey. If this is not as you understand it, please notify the writer, otherwise we will deliver according to this schedule."

To this letter, Wood, an employee of the Hovden Company, sent a reply under date of June 3rd, which read in part as follows: "We note that there appears to be some confusion in the matter of the four presses. . . . In regard to the second paragraph of your letter, you will bill two presses only to the Mazama Fisheries Corporation, care Commercial Boiler Works, Seattle, Washington, and bill ourselves at Monterey

for the other two, and we will arrange to have a truck call on June 15th to pick up these two presses if they will be ready by that time. Kindly advise.''

The position of plaintiff in this case is based entirely upon the use of the word ''bill'' in these letters and particularly in the last mentioned letter written by the employee of the Hovden Company. Plaintiff apparently takes the position that the word ''bill'' has a plain and unambiguous meaning and that said last mentioned letter constituted a written authorization to plaintiff to charge the two presses to the Hovden Company upon delivery of said presses. Defendant takes the position that the word ''bill'' has more than one accepted meaning; that it is frequently used with respect to delivery or shipping instructions (*Illinois Fuel Co.* v. *Mobile & Ohio Ry. Co.*, 319 Mo. 899 [8 S. W. (2d) 834]), and that it clearly appears from said correspondence that the parties were not discussing charges or payment but were merely discussing delivery or shipping instructions. In this connection, it may be stated that on cross-examination, plaintiff was questioned concerning said correspondence and the use of the word ''bill'' by his employee Harris in the letter of June 1st. He testified, ''That was Mr. Harris' letter there and that is his wording. I had no control over that. He has quite obviously slipped in his verbiage. He used the wrong words.'' Harris testified that he had nothing to do with charging for the presses and that ''All I was instructed to do was where to ship them and I sent the bill of lading for the last two presses to Hovden and I shot two of them up north with a bill of lading.''

The trial court sustained objections to a direct question relating to the sense in which the word ''bill'' was used in said correspondence, saying ''. . . the letter is the best evidence, and it is a simple word that the court can understand.'' There was other evidence, however, tending to show the sense in which said word was used. It appeared that no bill or statement was ever sent to the Hovden Company for said two presses; that the books of the plaintiff showed the purchase price of all the equipment to be a charge against the Mazama Company only; that the books of the Mazama Company showed the entire obligation to be owing by it to plaintiff; that plaintiff had assigned for collection his claim for the entire unpaid balance under his written agreement with the

Mazama Company; that plaintiff had furnished all information for the purpose of the attempted recapture of all four presses and that a written petition for that purpose had been filed in the bankruptcy proceeding setting forth as an existing obligation of the Mazama Company the entire unpaid purchase price for said equipment; that plaintiff had testified in said proceeding that "there was no other purchaser other than the Mazama Fisheries Corporation"; that plaintiff had charged off in his income tax return as a bed debt owing by the Mazama Company the entire unpaid balance of the purchase price; and that the correspondence and other business dealings between plaintiff and the Hovden Company during the several years following delivery of said two presses, including acknowledgment in full of payment of the account of the Hovden Company with plaintiff, shows that neither plaintiff nor the Hovden Company considered that the amount of the purchase price of the presses to be a charge against the Hovden Company.

The trial court did not find specifically that any written contract had been entered into by plaintiff and the Hovden Company, but did find certain facts in the nature of probative facts with respect to said correspondence. Furthermore, there were no findings on the issue of the bar of the statute of limitations. The trial court entered judgment against the Hovden Company for an amount equal to the full price of the two presses based upon the price per press which had been agreed upon at the time of the making of the written contract between plaintiff and the Mazama Company.

We believe that it is apparent from what has been said that this litigation was the result of an afterthought which developed when it appeared that plaintiff had suffered a loss by reason of the bankruptcy of the Mazama Company. The result of the judgment is to place upon the Hovden Company the obligation for the full price of the two presses which it had accepted, by agreement with the Mazama Company, in exchange for its two presses which it had delivered to the Mazama Company. Said exchange was made as a matter of accommodation to the Mazama Company and was necessitated by plaintiff's failure to deliver the four presses within the time required in his written agreement with the Mazama Company. Immediately after making said exchange in 1936, plaintiff's employee wrote to the Hovden Company on behalf

of plaintiff thanking the Hovden Company for its "courtesy extended on this equipment," but almost four years later, plaintiff instituted this action based upon the ambiguous wording of the above mentioned correspondence of June, 1936.

Regardless of the sense in which said employees may have intended to use the word "bill" at any place in said correspondence, we are of the opinion that there was no valid written contract between plaintiff and the Hovden Company. There was nothing in said correspondence or in any other evidence in the record to show that the written agreement between plaintiff and the Mazama Company was ever amended or modified so as to release the Mazama Company from its obligation to pay for all four presses but, on the contrary, the uncontradicted evidence showed that said contract was intended to remain and did remain at all times in full force and effect. There was therefore no valid novation (Civil Code, sec. 1531; *United States Gypsum Co.* v. *Snyder-Ashe Co.*, 139 Cal. App. 731 [34 Pac. (2d) 767]; *Blumer* v. *Madden*, 128 Cal. App. 22 [16 Pac. (2d) 319]; *Anglo-Calif. Trust Co.* v. *Wallace*, 58 Cal. App. 625 [209 Pac. 78]; *American Paper Bag Co.* v. *Van Nortwick*, 52 Fed. 752 [3 C. C. A. 274]; Williston on Contracts (Rev. Ed.), sec. 1869, page 5253), and there was no consideration for any alleged promise on the part of the Hovden Company to pay for said presses as plaintiff was already under a legal obligation to make delivery of said presses at the direction of the Mazama Company and the Mazama Company was already under the legal obligation to pay plaintiff for the same. (*Tipton* v. *Tipton*, 133 Cal. App. 500 [24 Pac. (2d) 525]; *Ellison* v. *Jackson Water Co.*, 12 Cal. 542; *Parrino* v. *Rallis*, 116 Cal. App. 364 [2 Pac. (2d) 515].)

We have thus far discussed this appeal solely from the standpoint of whether or not there was a valid written contract on the part of the Hovden Company to pay for said presses. Defendant also contends that there could be no implied contract under the circumstances. Plaintiff does not answer this contention but rests upon the claim that there was a valid written contract by reason of said correspondence. We therefore deem it unnecessary to discuss this last mentioned contention of defendant further than to state that in our opinion, said contention must be sustained.

The views which we have expressed necessitate a reversal

of the judgment and it appears unnecessary to discuss the remaining contentions of defendant.

The judgment is reversed.

Nourse, P. J., and Sturtevant, J., concurred.

A petition for a rehearing was denied February 28, 1942, and respondent's petition for a hearing by the Supreme Court was denied March 27, 1942.